No. 54,962

CLAUDE GEIGER, *Appellee/Plaintiff,* v. HEINZ C. WALLACE, *Appellant/Defendant.*

(664 P.2d 846)

Opinion filed June 10, 1983.

*Roger D. Thompson,* of Bengtson, Waters & Thompson, Chartered, of Junction City, argued the cause, and *Allen B. Angst,* of the same firm, was with him on the briefs for the appellant.

*David P. Troup,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case arose out of a landlord-tenant dispute in which the landowner defendant, Heinz C. Wallace, without compliance with statutory notice requirements and during the tenant's absence from the premises, nailed shut the door to the tenant's house and cut off the electricity. The tenant, Claude Geiger, sued the landlord for actual and punitive damages and received a judgment from the trial court sitting without a jury in the amount of $1,168 actual damages and $1,000 punitive damages. The landlord appealed.

The only evidence presented in the case was the testimony of plaintiff, Claude Geiger, and of defendant, Heinz C. Wallace. At the end of the trial, the matter was taken under advisement and

briefs were filed by counsel. In due course the trial court filed a Memorandum Decision which contained the following findings:

"That the testimony of the plaintiff is generally accepted by the Court and the Court disregards as not being acceptable to this Court the testimony of the defendant, Heinz C. Wallace. The Court can just not believe the testimony of said defendant.

"This is a landlord-tenant case and oral tenancy was created when the plaintiff on or about April 3, 1982 rented an apartment for himself, his wife, and two children in Junction City, Kansas and the defendant was in charge of said apartment. The plaintiff as tenant paid $160.00 as the first month's rent and an additional $80.00 as security deposit. The plaintiff then with his family took possession. Later and about May 2, the rent for May not being paid, the defendant for the landlord placed a cardboard notice on the front door of the apartment advising the tenant that he should visit with the landlord about payment within the next twenty-four hours. The physical evidence of this notice was never introduced into evidence at the trial. Plaintiff did introduce as plaintiff's exhibit #1 an eviction notice as posted by the Sheriff probably on May 6, 1982 which notice as prepared by the defendant told the tenant his rent must be paid in full by May 5, or he would be evicted from the premises.

"On or about the morning of May 6, 1982 the tenant, his wife, and children left the apartment premises around mid-morning and did not return to said premises until about evening of the same day. The tenant thereupon found the apartment premises had been denied him in that the front door was nailed shut from the inside. The tenant then somehow got to the second floor area and thru a balcony was able to obtain entry into his apartment. He removed some things and then left with his family and after about an hour and a half time had lapsed he found another location for he and his family to use as living quarters. The electricity to the first apartment had been turned off and these services and their use were under the direct control of the defendant.

"Further as a part of the original rental understanding which was oral the plaintiff was to pay utilities as used in his apartment which were under the name of the defendant landlord and the defendant introduced certain claimed utility bills at the trial however some of them showed that they were for services to May 21, and yet the plaintiff as tenant lived in the apartment dwelling with his family only until May 6, 1982.

"The Court further finds that under the claim of Count #1 of plaintiff's petition the Court finds that the landlord caused diminished electrical services to be furnished to this apartment and that the landlord through the defendant excluded the plaintiff from the said rental premises without legal cause or without legal action all in violation of K.S.A. 58-2563 and that the plaintiff is under Count #1 awarded damages in the sum of $1,000.00 for having been forced out of his apartment with his family at a time after dark in early May, 1982. The Court grants the plaintiff further relief in that under Count #1 he should have had the utility deposit of $80.00 returned to him and the Court grants him damages in addition of $120.00 as provided by K.S.A. 58-255(c) less $32.00 rent for the first six days rent in May making a total award under Count #1 of $1,168.00.

"Under Count #2 the plaintiff requests punitive damages and the Court does award the plaintiff $1,000.00 punitive damages based upon the evidence be-

lieved by the Court that the landlord or his representative nailed the front door of the plaintiff's apartment shut from the inside and for the further reason of reduced electrical services the Court feels that these punitive damages must be awarded to let the landlord know that such actions will not be accepted by the Court and especially where the defendant says that he looks after or has control of rental units numbering eight or nine and that the defendant should be and he is assessed the costs of this action."

The first point raised by the defendant on the appeal is, in substance, that the plaintiff failed to prove the allegations of his petition by a preponderance of the evidence and that the trial court erred in believing the testimony of the plaintiff rather than the testimony of the defendant. It was undisputed that the defendant never gave the plaintiff any statutory three-day notice as required by K.S.A. 1982 Supp. 58-2564(*b*) which provides in substance that the landlord may terminate the rental agreement if rent is unpaid when due and the tenant fails to pay rent within three days after written notice by the landlord of nonpayment and such landlord's intention to terminate the rental agreement if the rent is not paid within the time provided therein.

There is evidence in the record to support the findings of the trial court that the defendant, his wife, and his children left the apartment premises on the morning of May 6, 1982, and returned to the premises that evening to find that the defendant had nailed the door shut from the inside and turned off the electricity. There was thus substantial competent evidence to support the findings of the trial court that the defendant, as landlord, unlawfully excluded his tenant, the plaintiff, from the premises and that he had willfully diminished services to the tenant by causing the termination of electrical services as prohibited by K.S.A. 58-2563 which provides as follows:

"If the landlord unlawfully removes or excludes the tenant from the premises or willfully diminishes services to the tenant by interrupting or causing the interruption of electric, gas, water or other essential service to the tenant, *the tenant may recover* possession or terminate the rental agreement and, in either case, recover *an amount not more than one and one-half* (1 ½) *months' periodic rent or the damages sustained by the tenant, whichever is greater.* If the rental agreement is terminated, the landlord shall return that portion of the security deposit recoverable by the tenant under K.S.A. 58-2550." (Emphasis supplied.)

Thus the only real fact question presented to the trial court was the amount of damages which should be awarded to the plaintiff under all the circumstances.

The defendant's second point on the appeal is stated by the

defendant as follows: Whether K.S.A. 58-2563 allows for damages above and beyond those statutorily delegated under the Kansas Residential Landlord and Tenant Act, and, if not, whether the district court committed reversible error in awarding damages under Count I of the petition above and beyond those allowed under K.S.A. 58-2563? It is the position of the defendant that, when a landlord violates K.S.A. 58-2563, the court cannot award the tenant more than one and one-half times the monthly rent without regard to the damages actually sustained. We note that, under K.S.A. 58-2563, the tenant may recover "not more than one and one-half (1½) months' periodic rent or the damages sustained by the tenant, whichever is greater." In our judgment, the statutory intent is clear. A tenant may recover up to one and one-half (1½) months' periodic rent *unless* the court finds actual damages in a greater amount, in which event, the actual damages are the measure of the tenant's recovery. If the amount of actual damages are less than the statutory amount, then the tenant is entitled to recover the statutory amount. If the actual damages are in excess of the statutory amount, the tenant may recover his actual damages.

The defendant challenges the amount of the actual damages awarded to the plaintiff in the case. The trial court awarded total actual damages in the amount of $1,168. The court awarded plaintiff damages in the amount of $168 because the landlord had not complied with the provisions of K.S.A. 1982 Supp. 58-2550 by failing to return the tenant's security deposit in the amount of $80. K.S.A. 1982 Supp. 58-2550(*b*), (*c*), and (*e*) provide:

"(*b*) Upon termination of the tenancy, any security deposit held by the landlord may be applied to the payment of accrued rent and the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with K.S.A. 58-2555 and the rental agreement, *all as itemized by the landlord in a written notice delivered to the tenant.* If the landlord proposes to retain any portion of the security deposit for expenses, damages or other legally allowable charges under the provisions of the rental agreement, other than rent, the landlord shall return the balance of the security deposit to the tenant within fourteen (14) days after the determination of the amount of such expenses, damages or other charges, but in no event to exceed thirty (30) days after termination of the tenancy, delivery of possession and demand by the tenant. If the tenant does not make such demand within thirty (30) days after termination of the tenancy, the landlord shall mail that portion of the security deposit due the tenant to the tenant's last known address.

"(*c*) If the landlord fails to comply with subsection (*b*) of this section, the tenant

may recover that portion of the security deposit due together with damages in an amount equal to one and one-half (1½) the amount wrongfully withheld.

. . . .

"(e) Nothing in this section shall preclude the landlord or tenant from recovering other damages to which such landlord or tenant may be entitled under this act." (Emphasis supplied.)

It should be noted that K.S.A. 1982 Supp. 58-2550(b) provides that upon termination of the tenancy a landlord may apply the security deposit to the payment of accrued rent, "all as itemized by the landlord in a written notice delivered to the tenant." In this case, it is undisputed that the landlord failed to furnish the tenant with an itemized statement showing the nature of the items deducted from the security deposit. Thus the landlord obviously failed to comply with the notice section of the statute. The trial court allowed the tenant to recover $168 consisting of the $80 security deposit plus one and one-half the amount of the deposit ($120) making a total of $200 less a credit of $32 for the six days in which the tenant remained in possession of the premises. We find no error in the allowance of these actual damages for failure of the landlord to return the security deposit. The allowance of $168 for that item was thus correct.

As additional actual damages, the trial court awarded plaintiff the sum of $1,000 because the plaintiff was forced out of his rented apartment with his family without legal cause or legal action in violation of K.S.A. 58-2563. It appears that this allowance included $20 for food which spoiled when plaintiff was excluded from the apartment, and an additional sum for the plaintiff being forcibly excluded from the apartment. We find that the trial court was in error. As noted above, in determining actual damages, K.S.A. 58-2563 permits a tenant, who has been unlawfully excluded from the premises or whose services have been willfully diminished by the landlord, to recover an amount not more than one and one-half of the month's periodic rent or *the damages sustained by the tenant, whichever is greater.* We have carefully examined the evidentiary record and concluded that the plaintiff failed to prove actual damages in excess of one and one-half times the $160 rent, which would be $240. The only other evidence in the case presented on the issue of damages was the testimony of the plaintiff that he was mad when he found the door nailed shut and that he was asking $1,000 for nailing the door shut and keeping them out. The evidence showed that after plaintiff found the door locked, he found a place to live within

about an hour after he left the apartment and that he was claiming the $1,000 damages for the one hour it took to find a place to live. Plaintiff admitted on the stand that the sum of $1,000 was a little steep for that. Under the circumstances, we hold that the evidence was insufficient to show actual damages in excess of $20 for the spoiled food and that the trial court should have properly awarded the statutory damages in the amount of one and one-half times a month's periodic rent which would total $240. We, therefore, modify the judgment to change the award of actual damages from $1,168 to the sum of $240 plus damages in the amount of $168 because the landlord willfully withheld the security deposit, making a total of $408 actual damages.

The defendant's third point on the appeal is that the trial court erred as a matter of law in awarding exemplary or punitive damages to the plaintiff under Count #2 of plaintiff's petition. The defendant contends that punitive damages may not be recovered by a tenant for a violation of the Kansas Residential Landlord and Tenant Act, specifically, K.S.A. 58-2563. We note that under K.S.A. 58-2563, where the landlord unlawfully excludes the tenant from the premises or willfully diminishes services to the tenant by terminating his electrical services, the tenant may recover the "damages sustained by the tenant." Under existing Kansas law. a tenant who has been willfully ousted from the premises by the landlord may recover punitive damages *if the landlord has acted willfully and wantonly in violation of the tenant's rights.*

In *Walterscheid v. Crupper,* 79 Kan. 627, 100 Pac. 623 (1909), the owner of a dwelling house removed a portion of the roof of the house for the purpose of rendering it uninhabitable and for the purpose of compelling the tenant to vacate. The tenant brought an action for damages and this court held that the case was properly one for the allowance of exemplary damages. The court noted that the factual circumstances in the case indicated that the defendant had acted willfully and wantonly and it was a case where the defendants had taken the law into their own hands, in utter disregard of the plaintiff's rights. The court described the action of the landlord in the words used by an Illinois court in a similar case:

" 'The whole conduct of the parties was an outrage upon individual rights and

upon the law, and all the circumstances indicate wantonness and malice. In such a case exemplary damages were properly awarded, and no court should weigh the testimony nicely for the purpose of reducing the amount.' (*Jasper et al. v. Purnell,* 67 Ill. 358, 360.)" p. 630.

Later Kansas cases have recognized that as a general rule in an action for breach of contract damages are limited to pecuniary loss sustained and the breach of a contract alone does not form a basis for recovery of punitive damages. However, a party may recover punitive damages under an exception to the rule, when some independent tort results in additional injury and such tortious act indicates malice, fraud or wanton disregard for the rights of others. This rule is followed in *Hess v. Jarboe,* 201 Kan. 705, 443 P.2d 294 (1968), which involved an action by a tenant against a landlord to recover damages by reason of an ouster from certain farm and pasture land.

We find nothing in the residential landlord and tenant act (K.S.A. 58-2540 *et seq.*) which precludes a tenant from recovering punitive damages in an appropriate case. In the case now before us, it is clear that the defendant took the law into his own hands in utter disregard of the tenant's rights. The conduct of the defendant clearly showed wantonness and malice. Under the circumstances, an award of punitive damages was proper. The trial court awarded the sum of $1,000 for punitive damages. We cannot say that this award was excessive, and we uphold it.

The plaintiff contends in his brief that he should be awarded attorney fees and expenses incurred on the appeal as authorized by Supreme Court Rule No. 7.07 (230 Kan. lxii), because the appeal was taken frivolously or for the purpose of harassment or delay. As noted above, the defendant has prevailed as to that portion of his appeal relating to actual damages. The issues presented on the appeal are novel, and we cannot say that the appeal was taken by the defendant frivolously. We, therefore, decline to award attorney fees and expenses on the appeal to the plaintiff.

The judgment of the district court is modified as set forth in the opinion to reduce the amount of actual damages awarded the plaintiff and, as modified, the judgment of the district court is affirmed.