No. 57,649

BILLY G. JOHNSON and LINDA K. SHARP, *Appellees*, v. GEER REAL ESTATE COMPANY, RALPH NOLAND, and BARBARA NOLAND, *Appellants*.

(720 P.2d 660)

Opinion filed June 13, 1986.

*Edward H. Powers, Sr.*, of Kansas City, argued the cause and was on the brief for appellant Geer Real Estate Company.

*Daniel B. Denk*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Robert B. Van Cleave*, of the same firm, was with him on the brief for appellees.

*Gerald L. Goodell* and *David E. Bruns*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, were on the brief for *amicus curiae* Kansas Association of Realtors.

The opinion of the court was delivered by

MILLER, J.: This action was commenced by the plaintiffs, Billy G. Johnson and Linda K. Sharp, purchasers of real estate, against the broker, Geer Real Estate Company, and the sellers, Ralph and Barbara Noland, for damages for negligent or fraudulent misrepresentation. Plaintiffs claim that the property was represented as being connected to the city sanitary sewer system

when in fact it is not, but is served by a septic tank. The jury answered special questions unanimously. It absolved the Nolands but found Geer Realty 100% at fault. It found that the plaintiffs had sustained actual damages of $10,000 and it also awarded them punitive damages of $17,500. The trial court reduced the actual damages to $8,600, but otherwise approved the verdict and entered judgment for a total of $26,100. Geer Realty appeals, and plaintiffs cross-appeal.

The issues presented are: Whether there is substantial competent evidence to support the awards of actual and punitive damages; whether the trial court erred in its jury instruction as to the duty of a real estate broker; whether the broker can be liable even though his principal, the seller, is not; and whether the trial court erred in refusing to award attorney fees, in reducing the verdict to conform to the evidence, and in overruling Geer Realty's motion for new trial.

When a verdict is attacked on the ground that it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the successful party, will support the verdict, this court should not intervene. We review the evidence in the light most favorable to the party prevailing below. *Tice v. Ebeling*, 238 Kan. 704, 708, 715 P.2d 397 (1986); *Long v. Deere & Co.*, 238 Kan. 766, Syl. ¶ 1, 715 P.2d 1023 (1986). With these rules in mind, we turn to the evidence disclosed by the record in this case.

The facts are not in substantial dispute. Ralph and Barbara Noland owned a home in Kansas City, Kansas, at 6748 Cleveland, where they lived for approximately four years. They listed it for sale with Geer Realty in November 1981. Norman Schoneman, an employee of Geer Realty, prepared the listing agreement. He asked some questions of the Nolands, and Mrs. Noland provided him with a copy of the listing which they had received when they bought the property. That listing said: "Sewers—yes—per owner." The listing agreement prepared by Schoneman, signed by Mr. and Mrs. Noland and accepted by Geer Realty said: "Owner further warrants that plumbing is connected to sewer." The Nolands had purchased the property through Hale Real Estate and Bob Owen Real Estate, and the evidence

does not disclose who prepared the listing which Mrs. Noland furnished Schoneman.

The plaintiffs, Billy Johnson and Linda Sharp, were looking for a house. They contacted Sharon Pastrian, a salesperson for Geer Realty. Sharon showed the plaintiffs several houses. One had a septic tank, and the plaintiffs told Sharon that they were not interested in any house with a septic tank. Eventually, Sharon showed the plaintiffs the Noland house and, after reading the listing agreement, Sharon told the plaintiffs that the house was on sewers. Two contracts of sale were prepared, one on November 13, 1980, and a later one on December 4, 1980. Both contracts state that all plumbing and plumbing fixtures are connected to a sanitary sewer. The words "septic tank system" are stricken from both contracts. The sale was concluded and plaintiffs took possession of the property. They later discovered that the property was not on a public sewer but was on a septic tank, and they had sewage problems and had to have the tank pumped out.

Ralph Noland testified that during the time he and his wife lived in the house, there was never any indication that the house was on a septic tank. He never had any trouble with the toilets, no odors, no seepage, no soft or spongy spots in the yard, no standing water, no unusual grass growth or patterns, and he never had anybody clean the tank. Barbara Noland gave similar testimony.

Norman Schoneman testified that he did not check to make sure the house was on a sewer because he had no reason to believe that it was not. The owner stated that it was on a sewer; the old listing showed that it was on a sewer; and Schoneman did not notice any of the characteristics which indicate that a house is on a septic tank.

James W. Meyer, executive vice-president of the Kansas Association of Realtors, testified for the plaintiffs that if the owners state that a house is on sewers, there is no obligation on the broker to look further unless there is something suspicious that would indicate that the house is not on a sewer.

Achilles V. Wheat, a real estate appraiser, testified for the plaintiffs that he made a personal inspection of the property described as 6748 Cleveland. Cleveland dead-ends at the west line of the property. The home is approximately ten to twelve

feet lower than the house on the adjoining property; the basement floor level of the adjoining home is almost exactly level with the main floor level of 6748 Cleveland. The witness determined that the property was served by a septic tank and said that this was pretty evident for two or three reasons. There were no pumps to push the drains in the basement up to the sewer levels. The drain went out to the north, which was the opposite direction from the sewer. Also, the witness said that the notation on the listing, "Sewers—yes—per owner," should have been a red flag for the realtor to make further investigation. Wheat testified that in his opinion the property was worth $8,600 less than its fair market value would have been, had it been connected to the public sewer system.

The first issue is whether there was evidence to support an award of punitive damages in this case. In *Nordstrom v. Miller*, 227 Kan. 59, 605 P.2d 545 (1980), we summarized the rule relating to punitive damages in Syl. ¶ 12, as follows:

"Punitive damages are permitted whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy. Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs."

In *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, Syl. ¶¶ 16, 17, 681 P.2d 1038, *cert. denied* 469 U.S. 965 (1984), we said:

"Punitive damages are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy." Syl. ¶ 16.

"Punitive damages are allowed not because of any special merit in the injured party's case, but are imposed to punish the wrongdoer for malicious, vindictive or willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs." Syl. ¶ 17.

In *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, 673 P.2d 1112 (1983), we said:

"Whenever fraud, malice or gross negligence are present in a case, punitive damages are proper as a method of punishing the wrongdoer. A jury may consider . . . the grossness of the conduct of the party in awarding punitive damages." 234 Kan. at 369.

In *Geiger v. Wallace*, 233 Kan. 656, 664 P.2d 846 (1983), we held that punitive damages were properly allowed when the defendant's conduct indicates malice, fraud, or wanton disregard

for the rights of others. In *Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, 567, 568, 665 P.2d 730 (1983), in considering the size of an award for punitive damages and the exclusion of certain evidence, we quoted from earlier cases and other authorities and mentioned, as factors to consider in determining punitive damages, "malicious or vindictive acts or . . . a willful and wanton invasion of another party's rights," "the nature, extent and enormity of the wrong, the intent of the party committing it, and generally, all the circumstances attending the particular transaction," "outrageous conduct," "fraud," and "defendant's state of mind."

The rules relating to the allowance of punitive or exemplary damages are stated in 25 C.J.S., Damages § 119 and § 123(1):

"In order that there may be a recovery of exemplary damages, there must in general be present in the circumstances some element of malice, fraud, or gross negligence, otherwise the measure of damages is such an amount as will constitute a just and reasonable compensation for the loss sustained, and nothing more." § 119.

"Whether or not punitive damages should be assessed depends largely on the circumstances of each individual case, including the relationship between the parties and the duties owned by each. Punitive damages must be based on extreme and exceptional conduct. They are recoverable for an area of tortious conduct more culpable than negligence, but falling short of intentional conduct, and, in general, are allowed in a proper case when the wrongful act or the conduct complained of is accompanied or attended by certain aggravating circumstances, such as malice, wantonness, willfulness, oppression, gross negligence, or fraud . . . ." § 123(1).

In 22 Am. Jur. 2d, Damages § 249, the rule is stated:

"While every legal wrong entitles the party injured to recover damages sufficient to compensate for the injury inflicted, not every legal wrong entitles the injured party to recover exemplary damages. Most actionable wrongs furnish no basis whatever for the recovery of such damages. Exemplary damages, if recoverable at all, may be recovered only in cases where the wrongful act complained of is characterized by, or partakes of, some circumstances of aggravation, such as wilfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, indignity and contumely, insult, or fraud or gross fraud. In the absence of one or more of such elements, the damages recovered must be confined to compensation for the injury complained of."

The evidence, when viewed in a light most favorable to the plaintiffs, does not establish fraud, malice, gross negligence, oppression, outrageous conduct, or intentional wrongdoing. Geer Realty took its information from the Nolands, the owners and sellers of the property. The Nolands disclaimed any knowl-

edge that the property was served by a septic system. They informed Schoneman that the house was on sewers. They signed a contract so stating. The jury found that the Nolands, who lived in the home for some years, should not have known that the property was on a septic tank and did not breach their duty to disclose this material fact to the plaintiff. However, the jury found that Geer Realty should have known that the property was on a septic tank and thus Geer Realty breached its duty to disclose this material fact to the purchasers. There is no evidence in the record to support a finding that Geer Realty's conduct was fraudulent or intentional, or constituted gross neglect of duty. There is no evidence of knowing fraud, no evidence that Geer knew of the septic system, and no evidence that Geer knowingly, recklessly, or wantonly misled the plaintiffs. Simple negligence, standing alone, will not support an award of punitive damages. Under the facts of this case we hold the award of punitive damages against Geer Realty is not supported by the evidence, and that it was error to award punitive damages.

The testimony of Achilles Wheat, however, when viewed in the light most favorable to the plaintiffs, establishes that there were several indications which, to the eye of an experienced realtor, would indicate that the property was not served by the public sewer system. These include the physical location of the dwelling, some ten to twelve feet lower than the house on adjoining property; the absence of pumps to push the sewage in the basement up to sewer level; the exit of the drain from the basement in a direction opposite the public sewer; and the quotation "per owner" on the listing sheet. This evidence we hold was sufficient to establish ordinary negligence on the part of the realtor. This evidence supports the jury's finding that Geer Realty should have known that the property was on a septic tank instead of a city sewer line and breached its duty to disclose this material fact to the plaintiffs. This finding of negligent misrepresentation would support an award of actual but not punitive damages.

We turn to the next claim of error, whether the trial court erred in its jury instruction as to the duty of a real estate broker. The trial court instructed the jury as follows:

"INSTRUCTION NO. 19

"The laws of Kansas provide that no real estate broker or salesperson will fail to disclose, or ascertain and disclose ·to any person with whom the licensee is dealing, any material information which relates to the property with which the licensee is dealing and which such licensee knew or should have known."

The foregoing instruction parallels directly K.S.A. 58-3062(a)(31), a portion of the Real Estate Brokers' and Salespersons' License Act, K.S.A. 58-3034 *et seq.*, enacted in 1980. The act provides as follows:

"**58-3062.** . . . (a) No licensee shall:

. . . .

"(31) Fail to disclose, or ascertain and disclose, to any person with whom the licensee is dealing, any material information ·which relates to the property with which the licensee is dealing and which such licensee knew or should have known."

This action is based upon negligent misrepresentation. Defendant and the *amicus curiae*, the Kansas Association of Realtors, argue that the Kansas Real Estate Brokers' and Salespersons' License Act may not be the basis of a private cause of action for negligent misrepresentation. They argue that the act is merely a disciplinary standard which the Kansas Real Estate Commission may apply in dealing with complaints against real estate brokers. We disagree. The purpose of the act is clearly to require high standards of conduct by real estate brokers licensed in this state, and to protect the members of the public who deal with real estate brokers. The particular section here involved requires a broker to disclose, to anyone with whom he or she is dealing, material information relating to the property *which the broker knows or should have known*. We find the following comment on this section of the act in Altenhofen, *Potential Liability of Real Estate Brokers and Salesmen for Misrepresentation and Nondisclosure in Kansas*, 52 J.K.B.A. 9, 15-16 (1983):

"Kan. Stat. Ann. § 58-3062[(a)](31) does not merely prohibit an agent from failing to disclose only *known* facts, it also prohibits an agent from failing to disclose material facts of which he or she *should have known*. According to the plain language of the statute an agent could be liable for damages caused by his negligent nondisclosure of a material fact. The statutory language essentially creates a 'reasonable person' test to determine liability for nondisclosure by prohibiting an agent from failing to ascertain and disclose material facts of which the agent *should* have known. . . .

. . . .

"While the standard for disclosure is relative to what an agent '*should have known*' it is clear that actual knowledge is not necessary to effect an agent's liability for nondisclosure. Since actual knowledge by the agent is not a neces-

sary element of the KREBSA action for negligent nondisclosure, it clearly is a right of action which is not available under Kansas common law." (Emphasis in original.)

The argument is advanced that the act is regulatory in nature and is intended to benefit the public rather than a "special class" of individuals—those who purchase or sell property through real estate brokers. How will it advance the public interest if those members of the public who deal with brokers have no remedy for breaches of conduct under the act other than to complain to the Kansas Real Estate Commission? The commission is authorized by K.S.A. 1985 Supp. 58-3050 to revoke, suspend, or restrict real estate licenses, or to censure a licensee. The commission cannot adjudicate civil actions. The act provides for the creation of a real estate recovery revolving fund, which fund is used to reimburse or partially reimburse persons who suffer monetary damages by reason of the malfeasance of licensed real estate brokers or salespersons. K.S.A. 58-3068. That section provides in applicable part:

"58-3068. . . . (a) Moneys in the real estate recovery revolving fund shall be used in the manner provided by this act to reimburse persons who suffer monetary damages by reason of any of the following acts committed in connection with any transaction involving the sale of real estate in this state by any broker or salesperson who was licensed under the laws of this state at the time the act was committed or by any unlicensed employee of such broker or salesperson:

"(1) Violation of this act . . .

. . . .

"(b) Any person may seek recovery from the real estate recovery revolving fund under the following conditions:

"(1) Such person has received final judgment in a court of competent jurisdiction of this state in any action wherein the cause of action was based on any of the acts described in subsection (a) . . . ."

Thus, one of the prerequisites for making a claim against the real estate recovery revolving fund is the recovery of a final judgment in a lawsuit *in which the cause of action is based upon a violation of the real estate brokers' and salespersons' license act*. We conclude that the legislature intended that the act protect those persons dealing with real estate brokers licensed in this state, and that violations of the act may be the basis of suits brought by such persons against real estate brokers.

The next issue is whether the broker can be liable even though his principal, the seller, is not. The listing agreement between the sellers and the broker establishes an agency relationship, by

which the broker becomes the agent of the sellers. Geer Realty argues that since the jury found that the sellers were not liable for negligent misrepresentation, then Geer cannot be held liable when it was merely acting as an agent for the seller and was conveying to the purchasers information it had received from the sellers. The statute previously quoted, K.S.A. 58-3062(a)(31), clearly requires a broker to ascertain and disclose material information relating to the property which he or she "should have known." The jury specifically found that Geer Realty "through its agents *should have known* from the evidence presented that the property was on a septic tank instead of a City sewer line and breached [its] duty to disclose this material fact to the plaintiffs." (Emphasis supplied.) The jury could well have concluded that even if the sellers did not know the property was served by a septic tank system, a real estate broker, knowledgeable about Wyandotte County real estate, *should have known* the true facts and should have disclosed them to the purchasers. The statute places a higher duty upon the broker because of the broker's expertise in the matter and because of the public's reliance thereon. Under the facts of this case, the nonliability of the sellers does not absolve the broker of liability.

The plaintiffs contend that the trial court erred in refusing to award attorney fees under the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.*, and specifically, under K.S.A. 50-634(e). When this action was initially commenced, three separate claims were advanced—one for fraud or misrepresentation, one for breach of contract, and a third for violation of the Consumer Protection Act. However, when the matter came on for pretrial, the plaintiff relied upon fraud or either negligent or intentional misrepresentation, and particularly under the provisions of the Real Estate Brokers' and Salespersons' License Act noted above. The case was submitted to the jury on alternative theories of negligent misrepresentation or fraud. Violation of the Consumer Protection Act was not claimed. K.S.A. 50-634(e) provides in applicable part:

"(e) . . . [T]he court may award to the prevailing party a reasonable attorney's fee . . . if:

"(1) . . . a supplier has committed an act or practice that violates this act and the prevailing party is the consumer; and

"(2) an action under this section has been terminated by a judgment . . . ."

The allowance of attorney fees is made discretionary with the

trial court and is permitted only in an action brought under the quoted section. This case was not tried under the Consumer Protection Act, judgment was not entered under the act, and the trial court did not abuse its discretion in refusing to award attorney fees. We find this claim without merit.

The next issue is whether the trial court erred in reducing the verdict to conform to the evidence. The jury returned a verdict for actual damages for $10,000. The trial court ruled prior to trial that the measure of damages would be the difference between the value of the property as it existed and the value of the same property if connected to the public sewers. The evidence introduced at trial conformed to this guideline. The plaintiff's expert, Achilles V. Wheat, testified that the difference in value was $8,600. This was the highest difference in market value established by any of the witnesses. The trial court in a memorandum decision reduced the $10,000 award to $8,600.

Plaintiffs argue that there would be other expenses which they would incur by virtue of having a septic tank—the cost of having the tank pumped out, the cleanup of the house if the system plugged up, and future repairs to the septic system. There was no specific evidence as to the cost of future repairs. Since the matter was tried on the theory of difference in fair market value, the maximum amount established by the testimony of the witnesses fixes the maximum amount of the damages recoverable. The trial court merely made the judgment conform to the evidence. We conclude that the trial court did not err in that action.

Finally, defendant argues that the trial court erred in overruling its motion for new trial. What we have already said in this opinion disposes of the arguments advanced on this issue. We have considered other arguments not specifically treated in this opinion, but we find them unpersuasive and not material.

The judgment for the plaintiffs and against Geer Real Estate Company for actual damages in the sum of $8,600 is affirmed; the judgment for punitive damages is reversed.