NOT DESIGNATED FOR PUBLICATION

No. 121,746

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JAMES B. RUDA,
*Appellant*,

and

ANGELA V. RUDA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MICHAEL J. HOELSCHER and SEAN M.A. HATFIELD, judges. Opinion filed October 30, 2020. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Jennifer M. Hill* and *Katy E. Tompkins*, of McDonald Tinker PA, of Wichita, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: This case is representative of those cases dreaded by divorce attorneys—cases in which the divorce is not the end but simply a milestone in an ongoing battle between now divorced parents. Here, as in many such cases, the object of the dispute is control over the lives of their children.

The parties were married in August 2001. James B. Ruda commenced this divorce action in May 2012. The parties were divorced in November 2013. The court's docket sheet records 79 pages of pleadings, motions, briefs, hearings, and orders related to this

family's disputes, 62 pages of which relate to disputes after their divorce was granted, much of which related to custody, parenting time, and related matters.

At the time of their divorce James and Angela Ruda had two children, ages 8 and 10. The original parenting plan provided for joint legal custody and a schedule of shared residency.

In September 2013, the district court appointed the first of what ultimately turned out to be five case managers. Over the course of time James objected to and sought the replacement of each of these case managers. The most recent case manager, Dr. Columbus Bryant, was appointed in February 2017 and is the focus of this appeal.

Over the first few months following his appointment, Dr. Bryant issued three temporary recommendations—all approved by the district court—to resolve short-term disputes about what school the children would attend, what sports they would play, and who they would stay with for Easter.

In June 2017, Dr. Bryant issued a set of recommendations addressing 29 issues between the parties, some of which had been settled by prior case managers. Relevant to this appeal, Dr. Bryant first recommended designating Angela's home as the children's primary residence and reducing James' parenting time from alternating weeks to alternating weekends plus one weekday visit each week. According to Dr. Bryant, this reduction in parenting time was needed because James consistently started conflicts with Angela, cast her in a negative light to the children, pressured the children to make false reports against their mother, and distorted facts and events when confronted about his negative behavior. Dr. Bryant cautioned that he would recommend that James have even less parenting time—maybe even supervised visitation—if he did not shape up.

Next, Dr. Bryant addressed education issues. Under prior court orders, the children had attended a local Catholic school for several years. James insisted that the children transfer to a public school. Dr. Bryant recommended that the children stay at their current school and warned James that he was violating court orders by continuing to raise this issue.

Dr. Bryant also discussed the Individualized Education Program (IEP) of one of the children. James, who questioned whether this child needed an IEP, had withheld authorization for the school to implement the plan during a semester of the prior school year. James had since provided the necessary authorization, though he often objected to aspects of the IEP that school officials said were improving the child's reading and writing skills. School officials reported that the child's awareness of his parents' dispute over his education plan had harmed his academic performance. Accordingly, Dr. Bryant warned James against continued interference with the child's IEP.

In August 2017 the district court—over James' objections—temporarily adopted Dr. Bryant's recommendations, subject to a later review at an evidentiary hearing that would also deal with all other unsettled issues between the parties.

James continued to object to education issues settled by prior court orders, including the issue of the IEP for one of the children and a summer-school program previously approved by the court. So in September 2017, Dr. Bryant cautioned James that if he kept raising these and other settled topics, Dr. Bryant would recommend that James' parenting time be further limited.

In October 2017, Dr. Bryant found that James had violated the court's prior order by trying to rehash what school the children would attend and whether one of the children needed an IEP. Accordingly, he recommended that James' parenting time be temporarily suspended, with the resumption of James' parenting time once he acknowledged in

3

writing all court orders, agreed to follow them, and repaid Angela for case-management fees ordered in the June recommendations. The district court approved the latest recommendation the same day Dr. Bryant issued it.

James objected. He disputed Dr. Bryant's claim that he had violated court orders and asked the court to replace Dr. Bryant as case manager for bias and incompetence.

In December 2017 the district court reinstated James' parenting time, which had been suspended in late October.

In the first 10 months of 2018, Dr. Bryant issued a series of temporary recommendations dealing with James' detrimental impact on the children and his delinquency in paying case-management fees.

In October 2018 the court began a three-day evidentiary hearing that was concluded in December 2018. James asked the court to:

- remove Dr. Bryant as case manager
- revisit all of Dr. Bryant's recommendations
- restore James' parenting time
- modify the cost-sharing arrangement with Angela for the children's expenses
- order Dr. Bryant to refund all fees James had paid him
- order Dr. Bryant to pay $45,000 in attorney fees to James.

Angela asked the court for sole custody of the children, to keep the current parenting time plan, and for attorney fees.

The court heard testimony from the parties as well as the children's therapist, the school principal, James' current wife, and Angela's longtime female friend.

4

The court also heard the testimony of Dr. Bryant, who described this case as the most contentious and time-intensive case he had ever worked on. He described James as "one of the most conflictual parties [he] ever dealt with." According to Dr. Bryant, James often raised issues that Dr. Bryant or previous case managers had resolved, especially issues about the children's education and extracurricular activities. Dr. Bryant opined that it was in the children's best interests to award Angela sole authority to decide those issues. He recommended continuing with the current parenting plan, with Angela as the primary residential parent and James having parenting time on alternating weekends with one weekday visit after school each week.

Dr. Bryant explained his decision to suspend James' parenting time the year before. James had repeatedly questioned the validity of the child's IEP and requested that both children transfer to public school, even though prior court orders forbid him from relitigating those topics. Dr. Bryant's last two reports before the suspension warned James that continuing to raise these topics could lead to a reduction in parenting time. When James continued to press these already settled issues, Dr. Bryant concluded that a suspension of parenting time was the only meaningful consequence that could induce James' compliance.

In March 2019, the district court issued its findings and conclusions. It found that the statutory factors in K.S.A. 2019 Supp. 23-3203 favored maintaining joint legal custody with two exceptions: (1) Angela should have sole authority to decide education issues; and (2) the children should decide what sports they play. It also denied James' motion to replace the case manager, finding no evidence of bias or ineffectiveness on Dr. Bryant's part. The court issued its final order in April 2019.

Later that month James moved for relief based upon K.S.A. 2019 Supp. 60-259(a)(1)(D), which provides that the court "may, on motion, grant a new trial . . . on all

5

or part of the issues [if] . . . [the] decision is in whole or in part contrary to the evidence." He also sought relief based on K.S.A. 2019 Supp. 60-259(a)(1)(E), which is predicated upon "newly discovered evidence that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at trial."

James raised two grounds for relief in his motion: (1) the district court's decision went against the weight of evidence; and (2) newly discovered evidence showed Dr. Bryant's bias. The new evidence consisted of an affidavit from Liz Armstrong, the court's Alternative Dispute Resolution Coordinator, in which she stated that she had stopped assigning Dr. Bryant to new cases after an administrative judge found that he violated a subpoena and had "delays in recommendations and difficulties with" case assignments. The relief James sought was for the court to "reconsider and amend its decision to retain Dr. Bryant as the case manager and order the removal of Dr. Bryant."

Judge Sean Hatfield heard James' motion because Judge Hoelscher, who presided over the evidentiary hearing and issued the ruling in the case, had been reassigned to a different division in the district court. Judge Hatfield denied relief, and this appeal followed.

*James' Motion Under K.S.A. 2019 Supp. 60-259(a)(1)(D) and (E)*

James sought relief under K.S.A 2019 Supp. 60-259(a)(1)(D) and (E). These subsections of the statute allow the district court to grant a new trial if the "decision is in whole or in part contrary to the evidence" or if there is newly discovered evidence. K.S.A. 2019 Supp. 60-259(a)(1)(D), (a)(1)(E). Though James' motion did not specifically invoke the provisions of K.S.A. 2019 Supp. 60-259(f) to alter or amend the judgment, he relies on that provision on appeal in arguing that the district court failed to reconsider Judge Hoelscher's ruling.

6

James argues that Judge Hatfield gave short shrift to James' argument in his K.S.A. 2019 Supp. 60-259 motion that Dr. Bryant was not a neutral third party and did not have the technical knowledge to be an effective case manager. James cites statements from Judge Hatfield suggesting that he had a policy against overturning a decision of the judge who originally heard and decided the matter. James points out that Judge Hatfield stated in denying the motion that an unsuccessful litigant cannot "wait for a new judge and try to get a second bite of the apple. That's not going to happen here."

We review the decision to deny James' motion for abuse of judicial discretion. The district court abuses its discretion if it bases its decision on a legal or factual error, or if no reasonable person would agree with the decision. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

At the outset of the hearing on James' 60-259 posttrial motion, Judge Hatfield noted: "I appreciated the extra time to really dig into the motion . . . each party's proposed facts, . . . as well as Judge Hoelscher's ruling. . . . I spent some considerable time with this. I've reviewed responses, the law cited, as well [as] the motions."

Judge Hoelscher's ruling consisted of six dense, single-spaced pages reviewing all the testimony, including testimony and other evidence about Dr. Bryant's involvement in the case. James' motion included 45 citations to testimony elicited during the three-day evidentiary hearing. Having reviewed these matters, Judge Hatfield denied relief, stating that he could find "nothing presented that is so compelling" that warranted setting aside Judge Hoelscher's decision. It is apparent that Judge Hatfield considered James' motion before ruling on it.

James complains that Judge Hatfield did not make findings of fact and conclusions of law to support his decision. It is true that Supreme Court Rule 165 (2020 Kan. S. Ct. R. 215) requires the district court to provide adequate findings of fact and conclusions of

7

law to explain its decision on contested matters. See K.S.A. 2019 Supp. 60-252. But James had the duty to object to the district court's lack of findings and conclusions to give the district court an opportunity to correct any claimed inadequacies. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). When a litigant fails to object to the adequacy of the district court's findings and conclusions, we presume the district court found all facts necessary to support its decision. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017).

*James' Motion Under K.S.A. 2019 Supp. 60-259(a)(1)(E)*

The district court also rejected James' claim for relief based on newly discovered evidence. Under K.S.A. 2019 Supp. 60-259(a)(1)(E), newly discovered evidence is evidence "that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at trial." Judge Hatfield found that the purported new facts set forth in an affidavit—stating that Dr. Bryant was not receiving new case appointments—could not support reconsideration because they related to events that occurred after the hearing on James' effort to have Dr. Bryant removed. See *Geiman-Herthel Furniture Co. v. Geiman*, 160 Kan. 368, Syl., 161 P.2d 518 (1945). This is the wrong standard for considering a motion based on newly discovered evidence. See *State v. Norton*, 277 Kan. 432, 437-38, 85 P.3d 686 (2004). Nevertheless, we will uphold the district court's decision if it reached the proper result. *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

To justify relief James needed to show that the newly discovered evidence was "of such materiality that it would be likely to produce a different result upon retrial." *Norton*, 277 Kan. at 437. Judge Hatfield found that evidence about Dr. Bryant's performance in other cases in no way affected his neutrality and competence in this case. Thus, its introduction at trial would not have resulted in an outcome more favorable to James. Moreover, the evidence would have simply tended to discredit Dr. Bryant's testimony.

8

Such evidence does not support a motion for a new trial based on a claim of newly discovered evidence. *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984). The district court did not abuse its discretion in rejecting this claim.

*The Failure to Remove Dr. Bryant as Case Manager*

James challenges the denial of his motion to replace Dr. Bryant as the case manager. K.S.A. 2019 Supp. 23-3507 requires that a case manager appointed to help a family resolve custody and visitation issues must remain neutral. Thus, under K.S.A. 2019 Supp. 23-3509(c) a party may move to replace a case manager who is no longer objective. The moving party bears the burden of proving that removal is necessary. We review the decision on such a motion for abuse of discretion. *In re Marriage of Merrill & Jadlow*, 47 Kan. App. 2d 943, Syl. ¶¶ 5-6, 281 P.3d 559 (2012).

Abuse of judicial discretion, as James claims, occurs when the district court's ruling is based on an error of fact or law, or is one with which no reasonable judge would agree. *Gannon*, 302 Kan. at 741. James has the burden of proving that the removal of Dr. Bryant was necessary. Here, the district court's decision not to remove Dr. Bryant constitutes a negative finding. See *Merrill*, 47 Kan. App. 2d at 952-53. The district court necessarily found that James did not meet his burden of proof on this issue. When this happens, we will reverse the district court only when it has abused its discretion by disregarding undisputed evidence or when it was motivated by bias, passion, prejudice, or some other extrinsic consideration. 47 Kan. App. 2d at 953.

James bases this claim on Dr. Bryant having suspended James' parenting time in 2017. James argues that Dr. Bryant recommended a suspension to recover unpaid fees rather than to promote the children's best interests, and that the severity of this punishment shows Dr. Bryant's bias. James also argues that Dr. Bryant should be removed because he is not sufficiently knowledgeable in Kansas domestic relations law

9

and procedure. This argument is predicated on these same actions of Dr. Bryant in temporarily suspending James' parenting time.

Dr. Bryant testified that he recommended a suspension in parenting time because James repeatedly violated court orders by, among other things, relitigating settled issues. An order a few weeks before the suspension warned James that a reduction in parenting time would follow if he continued disputing certain education issues. When James ignored this warning, Dr. Bryant believed that a suspension was the only way to secure James' compliance with the court's orders. And compliance was key because the tension James caused by raising these issues was harming the children and affecting their academic performance.

This testimony provided a neutral explanation for Dr. Bryant's actions. It is substantial competent evidence that a reasonable person could accept as adequate to support the conclusion that James' parenting time should be temporarily suspended. See *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). Viewing the evidence in the light favoring Angela, the prevailing party, there was ample evidence to support the district court's ruling on this issue. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). James has not met his burden of proof on this issue. We will reverse only when the district court abused its discretion by disregarding undisputed evidence or when it was motivated by bias, passion, prejudice, or some other extrinsic consideration. There is no evidence here to support a reversal. The district court did not abuse its discretion in denying James' motion to replace Dr. Bryant as the case manager.

*Due Process*

As part of his argument on the failure to discharge Dr. Bryant, James raises for the first time a due process argument. He cites K.S.A. 2019 Supp. 23-3208(a), which grants a parent the right to "reasonable parenting time unless the court finds, after a hearing, that

10

the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health." James argues that the district court violated this provision— and his constitutional right to due process—by not holding a hearing before approving Dr. Bryant's recommendation to temporarily suspend James' parenting time until he acknowledged his obligation to comply with the court's orders.

The document containing the case management temporary recommendations was signed by Dr. Bryant on October 20, 2017. It recommended the temporary suspension of James' parenting time due to his repeated failure to comply with court orders by rehashing issues that had already been decided. That same day it was approved by the district court, and the district court issued an order making this recommendation an order of the court. The order was filed on October 24, 2017. James' parenting time was restored on December 20, 2017.

We are not required to consider on appeal claims that were not raised before the district court. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). More specifically, constitutional grounds for reversal asserted for the first time on appeal are not properly before us for review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014).

An exception to this rule arises when, among other things, the newly asserted claim involves only a question of law on proven or admitted facts and is finally determinative of the case. James seeks to invoke this exception. But Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34) requires an appellant to explain (1) why the issue was not raised below and (2) why it should be considered for the first time on appeal. Our Supreme Court had stated that Rule 6.02(a)(5) is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Here, James makes no attempt to explain why the issue was not raised before the district court. Moreover, he fails to explain how

11

resolution of this issue is finally determinative of the case. He has not complied with Supreme Court Rule 6.02(a)(5). Accordingly, this claim is not before us.

*The Joint Custody Order*

James contends that the district court erred in ruling that the parties will remain joint custodians of their children but that Angela will make all decisions regarding school decisions for the children.

First, he contends that the statute governing custody arrangements, K.S.A. 2019 Supp. 23-3206, forbids awarding one parent decision-making power over a single issue. That is, the district court may only award joint custody (shared decision-making authority on all issues) or sole custody (one parent decides all issues). The court cannot award sole custody on one issue and joint custody on all others.

Second, he contends that even if K.S.A. 2019 Supp. 23-3206 permits the arrangement adopted by the district court, the statute requires specific factual findings not made here.

James makes no argument that this modified custody arrangement was not in the children's best interests.

We review the district court's custody decision for abuse of discretion. *In re of Marriage of Whipp*, 265 Kan. 500, Syl. ¶ 4, 962 P.2d 1058 (1998). Here, James contends the district court based its decision on an error of law. To the extent that we are called upon to interpret the statute, that is an issue of law over which we have unlimited review. The cardinal rule when construing a statute is that the Legislature's intent controls if courts can discern it from the ordinary meaning of the text. *In re Joint Application of Westar Energy and Kansas Gas Electric Co.*, 311 Kan. 320, 328, 460 P.3d 821 (2020).

12

With regard to James' first contention, he argues that K.S.A. 2019 Supp. 23-3206 provides only two permissible legal custody arrangements: joint custody and sole custody. He argues that in joint custody both parents share decision-making authority over every major issue affecting their child. With sole custody, on the other hand, one parent decides every significant issue. Thus, it is improper to award one parent sole authority to decide educational issues and to grant joint authority to the parents on all other issues. By awarding Angela sole authority over only education decisions, the district court imposed neither joint nor sole custody, but a hybrid arrangement not permitted by K.S.A. 2019 Supp. 23-3206.

It is important to keep in mind that this is not a situation in which the court ordered joint custody but placed all parental decision-making in the hands of one parent. Here, the court designated the issue of the children's schooling a source of ongoing conflict between the parties and directed that decisions on that one issue will be decided by Angela, one of the joint custodians.

K.S.A. 2019 Supp. 23-3206 calls for one of two custody arrangements: joint custody or sole custody. It also provides that the "court may make *any order relating to* custodial arrangements which is in the best interests of the child." (Emphasis added.)

In joint custody "the parties shall have equal rights to make *decisions* in the best interests of the child." (Emphasis added.) K.S.A. 2019 Supp. 23-3206(a). Sole custody may be ordered when "it is not in the best interests of the child that both of the parties have equal rights to make *decisions* pertaining to the child." (Emphasis added.) K.S.A. 2019 Supp. 23-3206(b).

13

The default setting for decision-making in a joint custody arrangement is that both parents participate equally in all significant parenting decisions, whereas in a sole custody arrangement the sole custodial parent makes all significant parenting decisions.

But under either custodial arrangement, the statute simply refers to *decisions*. The right to make decisions does not necessarily require that each and every decision must be jointly made by the parents in a joint custody arrangement, or that both parents cannot participate in some parenting decisions in a sole custody arrangement if the court finds that such an arrangement is in the child's best interest. The statute specifically permits the court to "make any order relating to custodial arrangements which is in the best interests of the child." K.S.A. 2019 Supp. 23-3206. This permits the court in a case like the one before us to maintain joint custody—the preferred custodial arrangement—but carve out a specific parenting issue that is a source of constant and ongoing conflict between the parties and place decision-making on that issue in the hands of one of the parents to the exclusion of the other.

That is what happened in *In re Marriage of Gerow*, No. 100,930, 2009 WL 981672 (Kan. 2009) (unpublished opinion). There, the parties had joint custody of their daughter. The parties could not agree on their child's need for a particular surgery. The case manager recommended that the surgery proceed, and the district court adopted the recommendation. The mother sought a restraining order to prevent the father from scheduling the surgery, and the father filed an emergency motion for sole decision-making authority. The court granted father sole decision-making authority over this issue and denied the mother's restraining order. There was no motion to change custody, and the district court did not change the custodial arrangement from joint custody to sole custody. On appeal, our Supreme Court affirmed, characterizing the district court's ruling as "comport[ing] with the statutory requirement for awarding sole custody—in this case, the sole authority to make medical decisions—to [the father]." 2009 WL 981672, at *3.

14

In *Gerow*, there was no motion to change the parties' joint custody of their daughter and no such order was entered. Nonetheless, the Supreme Court in its unpublished opinion affirmed the district court's authority to designate one major parenting issue that was the subject of parental conflict and place decision-making on that issue with one parent.

In our present case, the district court did not err in maintaining the parties' joint custody of their children but designating Angela as the parent to make school decisions for the children.

On James' second contention, we conclude that there was no change from joint custody to sole custody so the district court was not required to make the findings called for in K.S.A. 2019 Supp. 23-3206(b). Nevertheless, the district court did explain in detail why limiting James' input over education issues was in the children's best interests. The district court dedicated four single-spaced paragraphs to why the children should stay at their current school over James' objection. It devoted three more paragraphs to Dr. Bryant's and the children's therapist's testimony that James started most of the disputes between the parties, causing the children stress and placing them in the middle of the conflict. And it spent another paragraph noting James' adamant opposition to, and Angela's consistent support for, the education plan of one of their children. After all that, the district court found that "the best interests of the minor children [were] served by" Angela making all education decisions. These findings and the evidence supporting them—which James does not dispute—would be sufficient to satisfy the requirements of K.S.A. 2019 Supp. 23-3206(b) if there had actually been a change from joint custody to sole custody.

*Angela's Request for Appellate Attorney Fees*

In July 2020, Angela filed a motion for appellate attorney fees together with the affidavit of her appellate counsel and an itemization of fees under Supreme Court Rule 7.07(b)(2) (2020 Kan. S. Ct. R. 50). James has filed his response in opposition to Angela's motion so the matter is now ripe for a decision.

Angela seeks appellate attorney fees under Rule 7.07(b) and (c). Subsection (b) of the Rule relates to fees generally and allows an award of fees in cases in which the district court has authority to award attorney fees. Subsection (c) of the Rule relates to the imposition of fees for frivolous appeals or for appeals brought for the purpose of harassment or delay. It provides for assessing fees against appellant or appellant's counsel or both of them.

*Supreme Court Rule 7.07(c)*

We have the authority to award fees under Rule 7.07(c) only if we find that "an appeal has been taken frivolously, or only for the purpose of harassment or delay." (2020 Kan. S. Ct. R. 51.) Angela argues that James' appeal is both frivolous and was taken for the purpose of harassment or delay.

An appeal is frivolous if it presents "no justiciable question" and is "readily recognized as devoid of merit," meaning "that there is little prospect that it can ever succeed." *Blank v. Chawla*, 234 Kan. 975, Syl. ¶ 5, 678 P.2d 162 (1984). Cases applying this definition have denied attorney fees if an appeal raised unsettled issues (234 Kan. at 982) or novel legal issues (*Geiger v. Wallace*, 233 Kan. 656, 662, 664 P.2d 846 [1983]). Unsettled or novel legal issues include unresolved issues of statutory interpretation. *In re Marriage of Hoffman*, 28 Kan. App. 2d 156, 160, 12 P.3d 905 (2000). Moreover, because Rule 7.07 requires a finding that "an appeal" is frivolous, the presence of even a single

16

nonfrivolous issue renders the entire appeal nonfrivolous. See *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 647-48, 621 P.2d 411 (1980) (denying attorney fees for an appeal that was not "totally without merit").

We are not persuaded that James' appeal was frivolous. In particular, James' statutory construction argument regarding joint versus sole custody under K.S.A. 2019 Supp. 23-3206 is a novel twist on an issue not addressed in any published Kansas appellate decision. Though we were not persuaded by James' arguments, raising this issue was not frivolous. *Blank*, 234 Kan. 975, Syl. ¶ 5. Accordingly, this appeal was not frivolous under Rule 7.07.

Angela also argues that fees are appropriate under Rule 7.07(c) because James appealed "for the purpose of harassment or delay." For support, she points to James' litigation tactics in the district court, including the several motions he filed to remove different case managers and his frequent attempts to relitigate settled issues. Perhaps tactics like those show harassment or delay in the district court, but they do not establish that this appeal was taken for the purpose of harassment or delay.

Angela cannot recover appellate attorney fees under Rule 7.07(c) because James' appeal was neither frivolous nor shown to have been taken for harassment or delay.

*Supreme Court Rule 7.07(b)*

Turning to the general provision for the assessment of appellate attorney fees under Supreme Court Rule 7.07(b), we have the authority to assess fees on appeal under Rule 7.07(b)(1) because, under K.S.A. 2019 Supp. 23-2715, the district court has the authority to award attorney fees as justice and equity require. See *In re Marriage of Patterson*, 22 Kan. App. 2d 522, 534, 920 P.2d 450 (1996) (applying a predecessor

17

statute to motions to modify child custody and child support). Indeed, the district court invoked this statutory provision to award Angela $5,000 in attorney fees.

Having the authority to assess fees, we need to consider whether justice and equity require the assessment of fees. In doing so, we conclude that James' claim that the district court abused its discretion in not removing Dr. Bryant as case manager is so lacking in merit—given James' high burden on appeal and the extensive evidence that supports the district court's ruling—that under the totality of the circumstances justice and equity warrant the assessment of fees under Rule 7.07(b). Angela is entitled to an award for the reasonable value of the work performed by her counsel in defending against this claim.

To evaluate Angela's claim for fees, we apply the reasonableness factors set out in the Kansas Rules of Professional Conduct 1.5 (2020 Kan. S. Ct. R. 297). Angela discusses those factors in a detailed affidavit attached to her motion. In his reply in opposition James does not.

As to the hourly rates charged by the attorneys and legal assistant who worked on Angela's brief—$225, $175, and $100, respectively—these rates are within the range of hourly fee rates this court has found reasonable. See *In re Marriage of Smith*, No. 117,664, 2018 WL 1247164, at *3 (Kan. App. 2018) (unpublished opinion) (approving a $200 rate and surveying cases approving rates of $275 and $225 in child custody cases).

Based on our analysis of the detailed fee statement of Angela's appellate counsel, she incurred fees directly attributed to drafting of her responsive brief on the case management issue of $4,802.50.

In addition, the detailed fee statement itemizes $9,405 in appellate fees related to counsel's review of transcripts, the district court's file, the trial exhibits, and documents needed to be added to the record on appeal.

18

The record on appeal is quite extensive. It covers the period from May 2012 to June 2019 and contains a multitude of motions, briefs, case management recommendations, hearings, and court rulings. The court's docket sheet records 69 pages of pleadings, motions, briefs, hearings, and orders related to this family's disputes after the parties' divorce was granted, much of which involved issues of custody, parenting time, and related matters. The records after February 2017, when Dr. Bryant was appointed case manager, are the ones calling for more rigorous scrutiny. On the other hand, James' arguments regarding the court's joint custody order and James' due process issue are issues of law that are not heavily dependent on the record.

We calculate from the itemized fee statement provided by Angela's counsel that 5,400 pages of documents; transcripts; trial exhibits; and pleadings, motions, briefs, and orders from the district court file were reviewed. It appears that these were all in one way or another related to the case management issue.

Based on appellate counsel's reasonable hourly rates and reasonable amount of time in the preparation of Angela's response to the case management issue at the heart of this appeal, we conclude that justice and equity require the imposition of a reasonable and appropriate award of appellate attorney fees in favor of Angela in the amount of $14,207.50.

Affirmed. Appellate attorney fees awarded to Angela and against James in the sum of $14,207.50.