No. 18,631.

P. E. HUSSEY, *Appellant*, v. CALVIN J. MICHAEL et al., *Appellees.*

SYLLABUS BY THE COURT.

1. SALE OF LAND—*Misrepresentation by Vendor—Repeated by Agent to Vendee—Agent Not Liable to Vendee.* Where the owner of land, by misrepresentation as to its character, effects a sale, agents who have acted for him in the matter are not rendered personally liable to the buyer for the fraud, merely by reason of their having innocently and in good faith repeated to him the false statements concerning the property made to them by the seller.

2. REAL-ESTATE AGENT — *Not Liable for Misrepresentation by Subagent Made without Agent's Knowledge.* Where real-estate agents, desiring to have land which has been listed with them shown to a buyer, employ for the purpose a person who without their knowledge shows the wrong land, and the owner, knowing of the fact, effects a sale by the false representation that the tract conveyed was the one that had been shown, the subagent is thereby made the agent of the owner, and the original agents are not liable to the purchaser for his fraud.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed February 7, 1914. Affirmed.

*S. S. Hawks*, and *T. V. McCluggage*, both of Wichita, for the appellant.

*R. L. Holmes*, *Charles G. Yankey*, and *W. E. Holmes*, all of Wichita, for the appellees.

The opinion of the court was delivered by

MASON, J.: P. E. Hussey, having bought a tract of land from Calvin J. Michael, brought an action against him for damages on the ground that he had been defrauded by false representations as to its character. He joined as defendants George F. Edwards and W. F. Melton, a firm of real-estate agents who acted for

Michael in the matter. A general verdict was returned against all of the defendants, but upon the special findings the court exculpated Edwards and Melton, and gave them judgment for their costs. From this decision the plaintiff appeals.

The verdict and findings may be taken to establish these facts: Michael placed the land with Edwards and Melton for sale, making materially false statements to them as to its character. Edwards and Melton repeated these statements to the plaintiff, without wrong intent, supposing them to be true. They also employed one L. M. Chenoweth to show the land to the plaintiff. Chenoweth showed the plaintiff a different and less valuable tract in the same vicinity, but this was without he knowledge of Edwards and Melton. The plaintiff was deceived both by the statements as to the character of the land, and by being shown the wrong tract.

We think Edwards and Melton can not be held liable by reason of having innocently repeated the false statements made to them by Michael. A principal, although personally innocent, may be liable for fraud practiced by his agent, acting within the scope of his employment. This is upon the theory that the acts of the agent are in legal contemplation the acts of the principal. Upon the same theory, the innocent repetition by the agent of the false representation made by his principal may well be conceived as the sole act of the latter in such a case as the present. "If . . . the agent makes false representations on behalf of his principal honestly believing them to be true, the mental element of fraud is lacking and he is not guilty of fraud and not liable for such, although his principal may have known that such representations were false. In order that an agent may be held liable for fraud there must be some fraudulent intent to deceive, in the circumstances of the particular case." (2 Clark & Skyles on the Law of Agency, § 602b.) In some classes of torts, particularly

in conversion, it is held that the agent may be personally liable to the owner of the property notwithstanding the innocence of his intentions. (Story on Agency, 9th ed., § 312.) It is suggested in a note in 50 L. R. A. 648, that good faith will not excuse an agent who makes false representations concerning property sold, being deceived by his principal. That rule might apply where the third person is misled because of reposing special confidence in the agent. Here Edwards and Melton showed the plaintiff the description of the property as entered on their books. They did not profess any personal knowledge of the matter. The representation relied upon by the plaintiff was essentially that of Michael, communicated to him by Edwards and Melton.

If Edwards and Melton are to be held liable, it must be upon the theory that Chenoweth was their agent and that they are legally responsible for his wrong doing. The jury were asked whose agent Chenoweth was, and answered that he was the agent of Edwards and Melton. This finding is conclusive against them, if it is given its full apparent import, determining that Chenoweth in legal contemplation was their agent, and not the agent of Michael. But in view of the ruling of the trial court the finding may reasonably be interpreted as meaning merely that Chenoweth was in fact selected and hired by Edwards and Melton, and was their agent in that sense, leaving the question of law as to the relations of the various parties to be determined upon the whole record. The facts as to Chenoweth's connection with the matter do not seem to be in dispute. The question as to who is liable for his misconduct becomes essentially one of law. It may be doubted whether Edwards and Melton had implied authority to employ Chenoweth to show the land, and thereby make Michael liable for his conduct as a sub-agent. Such authority may, however, have existed in virtue of the character of the service delegated to Chenoweth—it being essentially ministerial. (1 Clark

& Skyles on the Law of Agency, § 345*d;* Mechem on Agency, § 193.)   But as against the plaintiff the allegations of his pleadings appear to establish conclusively that Michael was responsible for the acts of Chenoweth.   The petition alleges that Michael stated to the plaintiff that the land he was selling him was the same that had been shown him by Chenoweth, knowing this to be false.   This amounts to an allegation that Michael knew of the act of Chenoweth and adopted it, thereby making him his agent by ratification, even if originally Chenoweth had represented only Edwards and Melton.

The question of law to be considered, then, resolves itself into this: Is an agent liable to a person injured by the fraud of a subagent whom he has appointed, the appointment having been ratified by the principal, the fraudulent act having been committed in a transaction within the scope of the employment?  We think a negative answer should be given, and that this is in accordance with the great weight of authority, as illustrated by the following quotations:

"An agent is not in general liable to third persons for the misfeasance or malfeasance of subagents employed by him in the service of his principal; but if he directs or authorizes the particular wrongful act of the subagent he will be liable to third persons therefor." (31 Cyc. 1563.)

"No action will ordinarily lie against an agent for the misfeasance, or for the negligence of those whom he has retained for the service of his principal, by his consent or authority, any more than it will lie against a servant who hires laborers for his master at his request, for their acts; unless, indeed, in either case, the particular acts which occasion the damage are done by the orders or directions of such agent or servant.   The action, under other circumstances, must be brought either against the principal or against the immediate actors in the wrong."   (Story on Agency, 9th ed., § 313.)

"Whether or not an agent is liable for the wrongs of a subagent depends upon whether or not the subagent is considered his agent in the particular transaction, or whether or not he has in some way participated in the wrong. . . . If . . . it is determined that the subagent is the agent of the initial agent only, and not of the principal, then such agent may be held personally responsible for the torts, whether of omission or commission, of his agent (the subagent) committed by the latter in the course of his agency. His liability in such cases is governed by the same rules as those governing the liability of any other principal for the torts of his agent. But where . . . it is determined that the subagent is the agent of the principal only, and not of the initial agent, the latter is not liable for such subagent's wrongs unless he has been guilty of fraud or negligence in employing him or unless he has authorized or participated in the commission of such wrongs." (2 Clark & Skyles on the Law of Agency, § 603.)

"Where . . . the subagent is to be regarded as the agent of the agent, the latter will be liable to the subagent, the principal and third persons as a principal. . . . But where, on the other hand, the subagent is found to be the agent of the principal, then the intermediate agent will not be liable to the subagent or to third persons as a principal." (Mechem on Agency, § 575.)

"Third persons can not maintain an action against an agent for damage done by the negligence of subagents employed in the service of the principal. The principal only, or 'the hand committing the injury,' is liable." (Note, 50 Am. St. Rep. 122.)

"Neither principle nor authority will warrant the holding a mere middle man, an intermediate agent between the master and the direct agent, constructively responsible for the acts of the latter." (*Brown v. Lent,* 20 Vt. 529, 533.)

The distinction between the nonfeasance and the misfeasance of an agent, by which his liability to a third person has sometimes been determined, although recognized generally by the text-writers and by some courts

(31 Cyc. 1559), seems very artificial, and is of at least doubtful value (see Note, 2 L. R. A., n. s., 378). An agent by whose breach of duty another has suffered injury may well be subjected to the same rule of liability as any one else. But here Edwards and Melton appear to have been without personal fault. If they are accountable to the plaintiff for his loss it is because they acted as the means of communication between him and Michael, or because the acts of Chenoweth are to be regarded as their own. The transaction of which the plaintiff complains is a sale of property to him by Michael, by means of false representations as to its character, and consequently as to its value. Edwards and Melton acted for Michael, not for themselves. If they had intentionally participated in the fraud they would of course be liable, but the finding is to the contrary. What Chenoweth did was to promote the sale, to which Michael and the plaintiff were the sole parties. Although Edwards and Melton were interested in the matter to the extent of their commission, and in that respect Chenoweth's services accrued to their personal benefit, they were neither parties to the sale nor privy to the misrepresentation employed to carry it through. We think the situation is not one in which they ought to be held liable for the deceit of the principal and the subagent.

The judgment is affirmed.