No. 64,871

JON D. BRUNETT and PATRICIA G. BRUNETT, Husband and Wife, *Appellants*, v. MERLE D. ALBRECHT, *Appellee*.

(810 P.2d 276)

Opinion filed April 15, 1991.

*Kenneth M. Carpenter,* of Carpenter, Chartered, of Topeka, argued the cause and was on the brief for appellants.

*Michael D. Hepperly,* of Pullman, Hepperly & Warner, Chtd., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Appellants John D. Brunett and Patricia G. Brunett, husband and wife, filed a civil action against appellee Merle D. Albrecht, a real estate agent, and Howard C. Kline and Betty J. Kline, the sellers, for fraudulent misrepresentation in the sale of residential real estate. In addition, the Brunetts claimed damages from Albrecht for his failure to disclose the actual conditions of the real estate as required by the Real Estate Brokers' and Salespersons' License Act, K.S.A. 58-3034 *et seq.* Though the plaintiffs prevailed at the trial court level, on appeal they claim that the trial court erred in: (1) ruling that evidence of similar acts or misrepresentation by Albrecht in the sale of other residences would not be admitted into evidence; (2) excluding evidence of Albrecht's economic or financial status; and (3) ruling that the Real Estate Brokers' and Salespersons' License Act does not create a separate cause of action.

The Brunetts contacted Albrecht in July, 1986, to assist them in locating a home. They testified they informed Albrecht that, because of Mr. Brunett's health condition and Mrs. Brunett's craft business, they required a well-constructed house with a good roof and a dry basement with storage space.

On September 23, 1986, Mr. and Mrs. Kline listed their home in Hope, Kansas, with Albrecht as an agent of the Carlson Real Estate Agency of Herington. The Brunetts testified that prior to showing the house Albrecht told them the Klines' house was in perfect condition. When the Brunetts inspected the basement, its walls were covered by paneling, cabinets, food lockers, and clutter. The Brunetts testified they were advised on the first visit

that there were no problems with the basement and on the second visit that the basement was dry and ideal for storing craft materials. The evening of the second visit, the Brunetts agreed to purchase the Klines' property for $37,500.

In March 1987, after a rain, the basement was flooded with approximately three inches of water. Filler which had been placed in the cracks of the basement wall fell out. When the Brunetts watered the yard, the basement walls leaked. Plaintiffs claim that the Klines and Albrecht misrepresented the condition of the basement walls and that neither the Klines nor Albrecht made full disclosures of the true condition of the basement.

Prior to trial, Albrecht filed two motions in limine: (1) to prevent the Brunetts from introducing any evidence regarding civil wrongs on specific occasions pursuant to K.S.A. 60-455 and (2) to prohibit the introduction of evidence of Albrecht's financial status to the jury. After the jury was selected, the trial court ruled that the 60-455 evidence would not be admitted and that Albrecht's financial condition was not an issue until the judge determined if punitive damages were appropriate. During the second day of trial, the Brunetts settled their claim against the Klines for $5,000. The trial continued against Albrecht.

An expert witness for the plaintiffs testified that the basements walls were severely cracked as the result of a longstanding problem of water inflow into the basement. He described the basement as a typical wet basement with buckled walls that had been braced. He stated that the significance of the cracks in the basement walls would not have been evident to the Brunetts. A contractor testified that the cost to correct the basement was approximately $32,508.

Albrecht testified he had been a real estate agent since 1980. Albrecht stated that when he was preparing the data sheet he measured the house and discovered that the basement measured 250 square feet smaller than the house. He said the Klines had informed him the basement was wet and that the walls were braced by a deadman. Albrecht asserted that though he failed to include this information in the data sheet he showed to the Brunetts, the Brunetts were told that the walls were braced by a deadman and the function of a deadman was explained.

Although Albrecht knew the walls were cracked and buckled, he testified the basement was as good or better than 70-80% of the basements in the Hope area. He claimed the specifications that the Brunetts gave were to find a clean and neat house under $40,000, in a small town that was ready to move into. In answer to questioning on cross-examination, Albrecht acknowledged he had noticed that Mr. Brunett had difficulty in walking, but asserted he was never told by the Brunetts that they needed a house in good condition. Albrecht also testified that Mrs. Brunett never advised him of her plans to use the basement for her crafts. Albrecht stated that he advised them not to buy this house if they needed a third bedroom because the basement was damp.

The Brunetts testified that Albrecht misled them when he told them that the VA appraiser had the responsibility to find defects in the house. Albrecht asserted though he had described the house as in perfect condition, that was a term of art meaning the house met all the buyers' requirements. He also testified that he did not tell them that the VA appraiser would find all the faults. He had informed the Brunetts that it was their prerogative to hire either an appraiser or an engineer to inspect the house.

The Brunetts were not sophisticated buyers. This was their first purchase of a house and they relied on Albrecht's experience.

After all the evidence had been submitted and prior to closing arguments, the trial judge informed counsel that the Real Estate Brokers' and Salespersons' License Act does not create a separate cause of action and that he would instruct the jury on common-law fraud and allow the jury to consider awarding punitive damages. After being informed of the judge's decision, plaintiffs' attorney made no comment, objection, or a request to reopen their case to present evidence of Albrecht's financial condition. The jury awarded the Brunetts $2,600 for compensatory damages and $400 for punitive damages. The Brunetts appeal, claiming the trial court rulings significantly diminished their verdict.

## REFUSAL TO ADMIT EVIDENCE OF OTHER
## CIVIL WRONGS

Evidence that a person committed a civil wrong on a specified occasion is inadmissible to prove his or her disposition to commit a civil wrong as the basis for an inference that the person com-

mitted another civil wrong on another specified occasion. Subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. K.S.A. 60-455. Relevancy is more a matter of logic and experience than of law. Evidence is relevant if it has any tendency to prove or disprove a material fact, or if it renders the desired inference more probable than it would be without the evidence. *State v. Faulkner*, 220 Kan. 153, 155, 551 P.2d 1247 (1976).

The purpose of a motion in limine is to assure all parties a fair and impartial trial by prohibiting inadmissible evidence, prejudicial statements, and improper questions by counsel. *State v. Quick*, 226 Kan. 308, Syl. ¶ 1, 597 P.2d 1108 (1979). When the trial judge granted Albrecht's motion in limine, he prevented the Brunetts from introducing K.S.A. 60-455 evidence of other civil wrongs committed by Albrecht.

The admission of evidence of prior acts or occurrences in a civil case is committed to the sound discretion of the trial court and will be overturned on appeal only upon a showing of abuse. *Folks v. Kansas Power and Light Co.*, 243 Kan. 57, 66, 755 P.2d 1319 (1988). K.S.A. 60-455 is to be strictly enforced and evidence may not be admitted for the purpose of proving the defendant's inclination, tendency, attitude, propensity, or disposition to commit a civil wrong. *State v. Bly*, 215 Kan. 168, 175, 523 P.2d 397 (1974). In ruling upon the admissibility of evidence of prior civil wrongs under K.S.A. 60-455, the trial court must: (1) determine it is relevant to prove one of the facts specified in the statute; (2) determine the fact is a disputed, material fact; and (3) balance the probative value of the prior civil wrong evidence against its tendency to prejudice the jury. *State v. Nunn*, 244 Kan. 207, Syl. ¶ 1, 768 P.2d 268 (1988).

The following proffer of the evidence of Albrecht's prior civil wrongs was made by counsel for the Brunetts:

"My argument, which was not taken down on the record, against that motion is basically as follows. And I might make this as a joint proffer of expected testimony, as well as argument against prohibiting plaintiff from introducing such evidence."

"No. 1, 60-455 says that evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In this case Mr. Albrecht has in my opinion been subject to civil redress in certain other matters, the first one being—which would be *Gary King v. Albrecht* which was a Dickinson County case that was filed in Dickinson County and involved substantially the same issues that are involved in this case, a misrepresentation, etc. In that case Mr. Albrecht's deposition was taken in which he testified substantially different than what he has been testifying to here in this case.

"No. 2, Mr. Albrecht has also been subjected to civil redress in a case entitled *Jack Jacobs and his wife v. Merle Albrecht.* That also has been filed in Dickinson County, Kansas. And it also alleges the same type of action, fraud, misrepresentation of material fact.

"There is a third case which has not blossomed to fruition which involves a Mr. Hancock (sp.) who is present in court today who also has a similar action which is pending—has not been filed—involving the same allegations of misrepresentation of fact, nondisclosure, concealment, etc. And this property is also in Herington, Kansas.

"As part of the plaintiffs' reason for requiring—or requesting that they be permitted to put on this evidence is that Mr. Albrecht has testified under oath that he is a real estate broker licensed under the laws of the State of Kansas, and as such he occupies a capacity of superior position over these plaintiffs. And we feel—the plaintiffs feel—that this action should also be made known to the court and the jury, especially as to the motive and intent in his business operations.

"For these reasons we are asking that we be permitted to put this evidence on."

Although the Brunetts claim these civil cases involved the same issue of fraud or misrepresentation, the proffer is void of any specific information as to why these other civil cases are relevant.

In actions involving fraud, evidence of the same or similar fraudulent misrepresentations made to someone other than the injured party is competent and relevant for the purpose of establishing the elements of knowledge, malice, and intent to defraud. *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 359, 629 P.2d 196 (1981). In *Celotex*, the Court of Appeals found that the documents of complaints and incidents about this particular type of proof were submitted to show Celotex's continued misrepresentations; therefore, the trial court did not err in admitting evidence of other similar Celotex roof failures.

Unlike the numerous documents available to the trial court in *Celotex*, the Brunetts' proffer is void of any similar acts or oc-

currences by Albrecht. Without a detailed proffer from the Brunetts' counsel, the trial judge was being asked to allow the admission of three other incidents and their accompanying collateral issues. Under our facts there was no abuse of discretion by the trial judge's refusal to allow the facts in three other civil claims against Albrecht to be introduced into evidence.

In their motion for a new trial, the Brunetts filed a particularized statement of misrepresentation by Albrecht in the other civil cases. On appeal the Brunetts argue that it was the trial court's responsibility to require them to make a more detailed proffer of the evidence. We disagree. When a motion in limine has been granted, it is the responsibility of the party being limited to proffer sufficient evidence to the trial court in order to preserve the issue for appeal. *Cf. State v. Nunn*, 244 Kan. 207, Syl. ¶ 5. The plaintiffs' proffer was insufficient to preserve the issue for appeal.

## EVIDENCE OF ALBRECHT'S FINANCIAL CONDITION

The trial judge ruled that evidence Albrecht's financial status would not be admitted until it was determined that the question of punitive damages should be submitted to the jury. After all of the evidence had been submitted and prior to closing argument, the trial judge informed counsel he would instruct the jury that, if it found the defendant's conduct was fraudulent, the jury could award the plaintiffs punitive damages. The Brunetts argue that the trial court's failure to indicate that it would instruct the jury on punitive damages prior to submission of all the evidence was error.

The order resulting from a motion in limine may prohibit reference during trial proceedings to material which is irrelevant or prejudicial to a fair trial. The order is a temporary protective order that is subject to change during the trial; to predicate error thereon it will be necessary to again present the material or proffer the evidence during trial on a motion to reconsider. *State v. Quick*, 226 Kan. at 313.

The trial judge's order in limine as to Albrecht's financial status was a temporary protective order. Where the trial court has made the introduction of evidence subject to a future ruling, the party wishing to avail himself of the evidence is required to renew the

objection and secure a ruling from the trial court so that it appears on the record. A party who does not renew an objection to direct the court's attention to the objection cannot claim error on appeal. It is not the trial court's duty to pursue introduction of evidence. Because the plaintiffs failed to proffer evidence of Albrecht's financial status during trial or request the opportunity to reopen their case prior to the trial judge instructing the jury, they failed to preserve the issue for appeal.

## REAL ESTATE BROKERS' AND SALESPERSONS' LICENSE ACT

The trial court instructed the jury on common-law fraud. The Brunetts claim the trial court erred in not allowing a separate cause of action based on the Real Estate Brokers' and Salespersons' License Act. They cite *Johnson v. Geer Realty Estate Co.*, 239 Kan. 324, 720 P.2d 660 (1986), for authority that violations of the Real Estate Brokers' and Salespersons' License Act may be the basis of suits brought against real estate brokers. Albrecht argues that after our decision in *Johnson* the 1986 legislature's amendment to the Act reversed the *Johnson* decision.

In *Johnson*, purchasers of real estate brought an action against the broker and vendors alleging negligent and fraudulent misrepresentation. This court found that under the Act the real estate broker could be held liable to purchasers for failing to disclose that the house had a septic tank rather than a sewer system since the real estate broker with his greater knowledge should have known the true facts. The trial court instructed the jury in language that paralleled K.S.A. 58-3062(a)(31), which provides:

"No licensee shall:

. . .

"(31) Fail to disclose, or ascertain and disclose, to any person with whom the licensee is dealing, any material information which relates to the property with which the licensee is dealing and which such licensee *knew or should have known*." (Emphasis added.)

After *Johnson*, the legislature amended the Act. L. 1986, chs. 209, 210. Recovery from the Real Estate Recovery Revolving Fund is now limited. K.S.A. 1986 Supp. 58-3068 provided the monies in the Real Estate Recovery Revolving Fund shall be used to reimburse persons who suffer monetary damages by reason of specified acts committed in connection with any transaction

involving the sale of real estate in the state by any broker or salesperson who is licensed under the laws of this state at the time the act was committed or by any unlicensed employee of such broker or salesperson. Among the specified acts for which recovery is allowed is engaging in fraud or making any substantial misrepresentation. K.S.A. 1986 Supp. 58-3068(a)(1)(B).

Another 1986 amendment to the Act, K.S.A. 1986 Supp. 58-3034(b), states that "[n]othing in this act shall be construed to grant any person a private right of action for damages or to eliminate any right of action pursuant to other statutes or at common law." The Brunetts claim that the addition of this language to the Act does not prohibit a private cause of action derived from a violation of the Act.

The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, so far as practical, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987).

The common law is subject to modification by judicial decision or legislative enactments in light of the changing conditions. We recognize the rule that a breach of a duty imposed by law is negligence and that damages may be predicated on a violation of the law if the breach is the proximate cause of the injury or substantially contributes to the injury. The declaration of public policy of whether an action can be brought under the common law or pursuant to a statute is a function of the legislative branch of our government. *Ling v. Jan's Liquors*, 237 Kan. 629, 640, 703 P.2d 731 (1985).

The Brunetts' logic is flawed. By amending the Real Estate Brokers' and Salespersons' License Act, the legislature made the Act regulatory in nature and intended it to benefit the public rather than a special class of individuals—those who purchase or sell property through real estate brokers. Though the Act, as amended, may no longer be the basis for a private cause of action for negligent or fraudulent misrepresentation, the legislature's

amendment of the Act did not eliminate any right of action pursuant to other statutes or at common law. The district court correctly determined that the Act, as amended, did not create a separate cause of action.

Affirmed.