No. 68,523

Gerald L. Mahler and Margaret C. Mahler, *Appellants*, v. Keenan Real Estate, Inc., Murval L. Hejny, and Louise Hejny, *Appellees*.

(876 P.2d 609)

Opinion filed June 3, 1994.

*Michael S. Holland*, of Russell, argued the cause and was on the brief for appellants.

*Martin J. Keenan*, of Keenan and Boeckman, P.A., of Great Bend, argued the cause and was on the brief for appellees Marval L. and Louise Hejny.

*Gregory G. Schultz*, of Turner and Boisseau, Chartered, of Overland Park, argued the cause, and *Lisa J. Lewis* and *Brian C. Wright*, of the same firm, of Great Bend, were on the briefs for appellee Keenan Real Estate.

The opinion of the court was delivered by

*Per Curiam*: The Mahlers (buyers) sued the Hejnys (sellers) and their agent, Keenan Real Estate, Inc., alleging that the Hejnys

breached their residential sales contract and that all defendants made negligent and fraudulent misrepresentations and failed to disclose material facts about the septic system and water wells. The district court granted partial summary judgment in favor of the Hejnys on the counts of fraudulent misrepresentation and fraudulent concealment. It entered summary judgment in favor of Keenan Real Estate on all causes of action against it—misrepresentation, fraudulent misrepresentation, and fraudulent concealment. The district court granted the Mahlers' request for certification pursuant to K.S.A. 1993 Supp. 60-254(b) and stayed proceedings while this appeal is pending. The Court of Appeals affirmed. We granted the Mahlers' petition for review.

The Mahlers bought from the Hejnys a house and 160 acres in Barton County, Kansas. When the Mahlers looked at the property, Donna and LaVonne Urban and their four children lived in the house. Donna Urban is the Hejnys' daughter. The Hejnys live about 3.5 miles from the property which was bought by the Mahlers.

Charles Tammen, a Keenan Real Estate agent, showed the Hejnys' property to the Mahlers. The Mahlers asked him if there were any water problems in the area. According to Mrs. Mahler, Tammen said "none." According to Mr. Mahler, Tammen's response was that he knew of none.

During the first visit, Tammen pointed out a pipe which had water running out of it onto the ground and stated that the water was from the shower, sink, and dishwasher. According to Mr. Mahler, Tammen explained that the water was piped away from the house to keep it from going to the septic tank and that the practice was common in the area. LaVonne Urban testified that approximately five years before the sale, he installed the overflow pipe in order to move excess water away from the laterals.

After the first visit, the Mahlers expressed general concern about the water on the property and asked Tammen if the property was on rural water. Tammen told them it was on well water rather than rural water. Tammen told the Mahlers that if they had questions he would find out the answers for them. Mr. Mahler asked him to find out if there was any shortage of water or

if there was any bad water in the area. Tammen asked Donna Urban if the water was all right and if there were any water problems on the property, to which she responded that, as far as she knew, the water was all right and there were no problems. Tammen later reported to the Mahlers that he knew of no water problems in the area.

After moving into the house, Mr. Mahler began experiencing problems with diarrhea. The Mahlers had their water tested, and the chemical analysis revealed that "[s]ulfate levels, while not above the 250 ppm maximum recommended, could cause a laxative effect in persons not used to drinking high sulfate water." It was also reported that sodium levels were above what is recommended for people on low sodium diets, that chloride levels were above what is recommended for drinking water, and that the elevated nitrate levels made the untreated water unfit for drinking.

Also after the Mahlers moved into the house, Keenan Real Estate, at the urging of the Mahlers, had the septic system inspected. The inspector reported that "sewer water" was being discharged out of the above-ground pipe.

The Mahlers admit that at the time they purchased the property, Tammen had no knowledge of any problems with the quality of the water or the septic system, that there was an abandoned cesspool, and that there were abandoned wells which needed to be plugged. The Mahlers also admit that "[t]he Hejnys knew of no water problems about which to tell Mr. Tammen." The Mahlers, however, denied the Hejnys' proposed uncontroverted statement that they, "on the date of the closing, had no actual knowledge of any water, septic, sewage or plumbing problems on the property in question." In this regard the district court stated:

"An examination of the depositions that in any way relate to knowledge the Hejnys had regarding the conditions of the home fails to establish they were aware of those material facts alleged by the plaintiffs to be the basis of their fraud claim. The plaintiffs have failed to come forward with evidence showing the Hejnys knew of the defects complained of and remained silent with that knowledge."

The Mahlers initiated this action by filing a four-count petition. The district court described the counts of the petition as follows:

"Plaintiffs assert four causes of action. The first is against defendants Hejny for breach of contract. The second cause of action is against defendant Keenan alleging misrepresentation. The third cause of action is apparently against both defendants alleging fraud. The fourth [is] for rescission." It appears that the second cause of action, for misrepresentation, is also against the Hejnys. The paragraph naming the Hejnys is incorporated into Count 2, and paragraph 13 of Count 2 refers to "defendants." The allegation in Count 4 is that the contract was invalid because the misrepresentations and concealments prevented the parties to the contract from reaching a meeting of the minds. Count 4 seems to have been treated as praying for the remedy of rescission rather than as stating a separate cause of action. For the purpose of summary judgment it was ignored.

Keenan Real Estate and the Hejnys filed motions for summary judgment. The district court wrote two decisions, the original and a second one following Keenan Real Estate's motion for reconsideration. The breach of contract count was not a part of the Hejnys' motion. Nonetheless, the district court included it in its original memorandum decision. The district court stated: "To avoid any misunderstandings now or in the future, the Court affirmatively finds there are genuine issues of material fact which preclude the granting of summary judgment with regard to plaintiffs' first cause of action alleging a breach of contract by the Hejnys."

In addition to denying summary judgment on the breach of contract count due to genuine issues of material fact, the district court denied summary judgment on the same ground "with regard to plaintiffs' second cause of action alleging misrepresentation of material facts by defendant Keenan." After denying summary judgment on misrepresentation, the district court granted it in favor of all defendants on fraud and " 'fraud by silence.' "

In its original memorandum decision, the district court stated:

"In the plaintiffs' petition the allegations of fraud and misrepresentation in count III appear to be directed against both [sic] defendants. In the plaintiffs' response to defendants' motion for summary judgment the discussion regarding constructive fraud appears to be directed solely against defendant Keenan and

not against defendants Hejny. Therefore the Court will not discuss the doctrine of constructive fraud as it pertains to the defendants Hejny in light of the third cause of action."

The district court gave the following reasons for granting summary judgment:

(1) The Mahlers failed to produce any evidence that Tammen knew that any of his statements were false.

(2) There is no evidence that any of Tammen's statements were made with reckless disregard for the truth.

(3) The Mahlers met with the Hejnys once or twice before closing "but never discussed anything about water, sewage, septic or plumbing aspects of the property."

(4) The Mahlers failed to produce any evidence that the Hejnys knew of problems with the water and septic system.

The district court, in its original memorandum decision, noted that the Mahlers argued that Tammen, a real estate agent, could be held liable for false statements which he did not know were false.

"The plaintiffs argue this constitutes constructive fraud and under the law of Kansas the plaintiffs are entitled to recover damages from defendant real estate agent for fraud. This is contrary to the law as stated in *Nordstrom v. Miller*, [227 Kan. 59], *Goff v. American Savings Association*, 1 Kan. App. 2d 75 and *Scantlin v. Superior Homes, Inc.*, 6 Kan. App. 2d 144."

Keenan Real Estate filed a motion requesting the district court to reconsider that portion of its decision which allowed "the plaintiffs to proceed against [Keenan] on the claim of negligent misrepresentation." In the district court's second memorandum decision, the district court confirms that it "struck plaintiffs' cause of action based upon fraud but allowed the cause of action based upon negligent misrepresentation to remain." The district court granted the motion to reconsider and entered summary judgment in favor of Keenan Real Estate and against the Mahlers on their claim of negligent misrepresentation.

There were two issues considered by the Court of Appeals in its opinion:

"Did the trial court err in concluding that Kansas does not recognize a cause of action for negligent or innocent misrepre-

sentation by a real estate agent who induces a buyer to purchase real estate?"

"Did the trial court err in concluding that the Mahlers failed to present sufficient facts to establish active or constructive fraud by the Hejnys or Keenan?"

The Court of Appeals answered both questions in the negative. In their petition for review, the Mahlers stated two issues, but they appear to be alternative wordings of the same issue—the first issue considered by the Court of Appeals. They did not file a supplementary brief in this court. Keenan Real Estate did, and its discussion is confined to the first issue considered by the Court of Appeals.

The Mahlers' claim against Keenan is for negligent misrepresentation. The district court ruled that a claim for negligent misrepresentation is not recognized in Kansas. Although the Court of Appeals framed the issue to include both negligent and innocent misrepresentation, only negligent misrepresentation is involved in the present case. Thus, we consider if a cause of action for negligent misrepresentation against a real estate agent is recognized in this state. We do so in the context of the district court's finding no such action exists in Kansas and granting summary judgment to the defendant real estate agency.

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, Syl. ¶¶ 1, 2, 827 P.2d 24 (1992).

"The party opposing summary judgment has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case." *Hammig v. Ford*, 246 Kan. 70, 72, 785 P.2d 977 (1990).

In its second memorandum decision, the district court concluded that in Kansas there is neither a statutory nor a common-

law buyer's cause of action against a real estate agent for negligent misrepresentation. The principal authority cited was *Brunett v. Albrecht,* 248 Kan. 634, 810 P.2d 276 (1991). The district court stated that *Brunett* "clearly holds no private right of action exists for negligent misrepresentation as a result of the Kansas Real Estate Brokers' and Salespersons' License [KREBSLA], K.S.A. 58-3034 *et seq.*" The Court of Appeals disagreed, correctly pointing out that

"*Brunett* does not reach or decide if a cause of action for innocent or negligent misrepresentation against a real estate agent exists pursuant to statutes other than the KREBSLA or at common law. It only holds that the Act is no longer the basis for a private cause of action. Any rights in existence prior to enactment of the KREBSLA were not extinguished by the 1986 amendment."

The Brunetts sued the real estate agent who had assured them that there were no problems with the basement of the house they bought. The basement leaked. The district court judge instructed the jury on fraud, but refused to instruct on a separate cause of action under KREBSLA. This court affirmed, stating that "[t]he district court correctly determined that the Act, as amended, did not create a separate cause of action." 248 Kan. at 643. The significance of the amendment is that the Brunetts relied on *Johnson v. Geer Realty Estate Co.,* 239 Kan. 324, 720 P.2d 660 (1986), for authority that KREBSLA "may be the basis of suits brought against real estate brokers." 248 Kan. at 641. In *Johnson,* the agent's liability for negligent misrepresentation was based upon his violating what is now K.S.A. 1993 Supp. 58-3062(a)(34), a provision of KREBSLA: "No licensee, whether acting as an agent or a principal, shall . . . [f]ail to disclose, or ascertain and disclose, to any person with whom the licensee is dealing, any material information which relates to the property with which the licensee is dealing and which such licensee knew or should have known." After *Johnson,* the legislature amended the Act. See L. 1986, ch. 209, § 19. The post-*Johnson* amendment states: "Nothing in this act shall be construed to grant any person a private right of action for damages or to eliminate any right of action pursuant to other statutes or at common law." See K.S.A. 1993 Supp. 58-3034(b). This court concluded that "[t]hough the Act, as amended, may

no longer be the basis for a private cause of action for negligent or fraudulent misrepresentation, the legislature's amendment of the Act did not eliminate any right of action pursuant to other statutes or at common law." 248 Kan. at 642-43.

Because the amendment did not extinguish common-law causes of action in existence before the enactment of KREBSLA, the Court of Appeals examined pre-KREBSLA case law. Based on its review of cases, the Court of Appeals concluded that "[a] real controversy exists as to whether Kansas courts have ever recognized a common-law cause of action for innocent or negligent misrepresentation against a real estate agent or broker."

The Court of Appeals considered four cases which stand for the proposition that the person who made material misrepresentations need not have known that they were false in order to be held liable. The cases are *Topinka v. American Eagle Fire Ins. Co.*, 167 Kan. 181, 205 P.2d 991 (1949); *Dodd v. Boles*, 137 Kan. 600, 21 P.2d 364 (1933); *Becker v. McKinnie*, 106 Kan. 426, 186 Pac. 496 (1920); and *Bice v. Nelson*, 105 Kan. 23, 180 Pac. 206 (1919). None involves a real estate agent's statements. In *Bice*, *Becker*, and *Dodd*, sellers were alleged to have made material misrepresentations which induced buyers to purchase property. In each case, the sellers were held liable even though they did not know the statements were false. In *Bice*, the court said:

"In this state, false statements of fact, made by a seller to induce a sale and relied on by the buyer, are actionable, without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive. (*Wickham v. Grant*, 28 Kan. 517; *Morrow v. Bonebrake*, 84 Kan. 724, 115 Pac. 585; *Westerman v. Corder*, 86 Kan. 239, 119 Pac 868; *Maffet v. Schaar*, 89 Kan. 403, 131 Pac. 589; *Akins v. Holmes*, 89 Kan. 812, 820, 133 Pac. 849.)" 105 Kan. at 26.

In *Becker*, McKinnie, through his agent, Bendle, sold water rights to Becker. Bendle misrepresented the holding capacity of the reservoir and the sufficiency of the available water to irrigate Becker's acreage. On appeal, McKinnie contended that his demurrer should have been granted on the ground that Becker did not allege that the statements were known to be false when made. This court rejected McKinnie's argument:

"While the pleader did not in so many words state that defendant knew the statements to be false, the averments of the petition fairly imply that they were deceitfully made and that by reason of the deceit so practiced the plaintiff was induced to part with his money. However, it was enough if the false statements were made as facts to induce a sale and the plaintiff bought the water rights relying on defendant's representations. The defendant cannot escape liability for such false representations, even if he did not know them to be untrue. He had the means of knowledge, and it was his duty to know the truth before making the representations that were made. Having made them as facts and thereby induced the plaintiff to rely on the statements to his prejudice, he is bound although he may not have known that they were untrue, and may have had no purpose to defraud the plaintiff. Under the circumstances, knowledge of the untruth is imputed to him, and in contemplation of law he knew his statements were false. In *Morrow v. Bonebrake*, 84 Kan. 724, 115 Pac. 585, it was decided that:

'If a seller makes positive statements and representations not known by him to be true, intending to induce a sale, and a purchase is made in reliance upon his representations which turn out to be false, his action is fraudulent and he is as answerable to the purchaser as if he had made the representations knowing them to be false.' (Syl. ¶ 5.)

"In another decision of like import, it was said:

'In this state, false statements of fact, made by a seller to induce a sale and relied on by the buyer, are actionable, without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive.' (*Bice v. Nelson*, 105 Kan. 23, 181 Pac. 558.)

"(See, also, *Westerman v. Corder*, 86 Kan. 239, 119 Pac. 868; *Maffet v. Schaar*, 89 Kan. 403, 131 Pac. 589; *Akins v. Holmes*, 89 Kan. 812, 133 Pac. 849.)" 106 Kan. at 427-28.

In *Dodd*, the principal issue on appeal was the propriety of rescission under the circumstances, but this court also had the opportunity to consider the seller's contention that he should not be held liable because when he made the statements, he believed them to be true. Quoting the rule from *Bice v. Nelson*, this court rejected the seller's contention. With regard to the rule, the court noted that it "was observed and strictly followed in the case of *Pellette v. Mann*, 116 Kan. 16, 225 Pac. 1067." 137 Kan. at 606.

None of these cases specifically involves a real estate agent's statements, but the statements in *Bice* and *Becker* were made by agents. Thus, principles of agency law applied. In *Becker*, the agent arranged the purchase of water rights, which often determine the use and value of real property in this state. Among the

cases cited as authorities in *Bice*, *Becker*, and *Dodd* there are several which involve real property and/or agents. *Akins v. Holmes*, 89 Kan. 812, 133 Pac. 849 (1913), involved rescission of a contract for the purchase of real property, and false representations were made by an agent to induce the purchase. Because the same statements were made by the principal, however, liability was based on his statements rather than on the agent's. In *Westerman v. Corder*, 86 Kan. 239, 119 Pac. 868 (1912), and *Maffet v. Schaar*, 89 Kan. 403, 131 Pac. 589 (1913), false representations were made by the sellers to induce the purchase of real property.

*Topinka* did involve statements made by an agent. *Topinka* was an action to set aside a release of the insurer's liability under a hail insurance policy. Topinka alleged that the insurance company's adjusting agent secured his signature on the release by making false statements. The adjuster convinced Topinka that most of his crop loss was due to a disease rather than to hail. This court concluded that it was unnecessary for Topinka to prove that the adjuster knew his statements were false.

"Whether made in good faith, or with fraudulent intent, or merely through over-anxiety to make a good settlement for his insurance company, the fact remains that the adjuster did make the representations with the intention and for the purpose of inducing plaintiff to make a settlement favorable to the insurance company and to part with all right to further recovery under his policy of insurance. Where the insurance adjuster's false representations resulted in damage to the assured, the latter's pain of loss is not eased by the appellant's averments that the adjuster believed his statements to assured were true at the time they were made." 167 Kan. at 185.

In the present case, the Court of Appeals relied primarily on *Nordstrom v. Miller*, 227 Kan. 59, 605 P.2d 545 (1980), in holding that Kansas does not recognize a cause of action against a real estate agent absent a showing of intentional fraud. The Court of Appeals stated:

· "In *Nordstrom*, the Kansas Supreme Court held that a real estate agent could not be liable in fraud for innocently and in good faith passing on a fraudulent misrepresentation from his or her principal, the seller, to the buyer when the agent had no knowledge that the statement was false, following *Hussey v. Michael*, 91 Kan. 542, 543, 138 Pac. 596 (1914). *Nordstrom* differs from our case

only as to whose misrepresentations the real estate agent passed on to the buyers. Here, Tammen relied on statements from the Urbans (the tenants) that there were no problems with the septic tank or the wells. Tammen did not reveal the source of his information. The Mahlers have made no showing that Tammen knew or should have known that these statements were false."

There was, however, no allegation of negligent misrepresentation in *Nordstrom*. The only allegation against any defendant was fraudulent misrepresentation. The rules stated in *Nordstrom* from which the Court of Appeals drew the impression that this state's courts would not hold a real estate agent liable for negligent misrepresentation were stated without regard to any question about negligent or innocent misrepresentation. Syllabus ¶ 6, which is drawn from the court's discussion of the *sellers'* liability, states: "Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury." Syllabus ¶ 2 states: "If an agent makes false representations on behalf of his principal honestly believing them to be true, the mental element of fraud is lacking and he is not guilty of fraud and not liable for such, although his principal may have known that such representations were false." 227 Kan. 59.

In addition to being devoid of any consideration of the legal question whether negligent misrepresentation is actionable, *Nordstrom* is not controlling of the present case because it is distinguishable on the facts. There is one critical respect in which the Court of Appeals was mistaken about the comparison of the facts of *Nordstrom* and those of the present case. The Court of Appeals believed that "Tammen's information came from the Urbans," the daughter and son-in-law of the sellers, the Hejnys. Seemingly based on the relationship between the Urbans and the sellers and the Urbans' long-term occupancy of the property, the Court of Appeals concluded that this case was indistinguishable from *Nordstrom* where the real estate agent's information came from the seller. With respect to Tammen's statement that water from the pipe was from the shower, sink, and dishwasher, however, the record does not support the conclusion that the mis-

information came from the Urbans. Unlike the agent in *Nordstrom*, therefore, Tammen cannot be absolved of liability on the ground that the misinformation was provided to him by the sellers or occupants and he believed it to be true.

In Chapter 22 of the Restatement (Second) of Torts (1976), the tort of negligent misrepresentation is defined:

"Topic 3. Negligent Misrepresentation

"§ 552. Information Negligently Supplied for the Guidance of Others

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

Clearly, this court has imposed liability for negligent misrepresentation without labeling it as such or mentioning § 552. This section is not inconsistent with our holdings in *Dodd, Bice, Becker*, and *Topinka*. As noted by Judge Welliver in his dissenting opinion in *Huttegger v. Davis*, 599 S.W.2d 506, 514 (Mo. 1980):

"The elements of negligent misrepresentation differ from those of fraudulent misrepresentation in one major respect: while the latter requires proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false, the former merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information."

We find § 552 to be a fair statement of law and persuasive authority, and we adopt the Restatement (Second) of Torts § 552.

We hold that a cause of action for negligent misrepresentation as defined in § 552 is recognized in the state of Kansas.

In *Bevins v. Ballard*, 655 P.2d 757, 763 (Alaska 1982), the Alaska Supreme Court stated:

"The policy favoring liability for innocent misrepresentation is found on a recognition that purchasers should be entitled to rely on a broker's representations. As one opinion notes:

'Real estate brokers and their agents hold themselves out to the public as having specialized knowledge with regard to housing, housing conditions and related matters. The public is entitled to and does rely on the expertise of real estate brokers in the purchase and sale of its homes. Therefore there is a duty on the part of real estate brokers to be accurate and knowledgeable concerning the product they are in the business of selling—that is, homes and other types of real estate. Courts have held in many cases that purchasers are entitled to rely on real estate brokers' statements.' *Lyons v. Christ Episcopal Church*, 71 Ill. App. 3d 257, 27 Ill. Dec. 559, 389 N.E.2d 623, 628 (1979) (dissenting opinion).

"We find this reasoning persuasive. Parties to real estate transactions frequently do not deal on equal terms. Real estate brokers are licensed professionals, possessing superior knowledge of the realty they sell and the real estate market generally. Prospective purchasers recognize this expertise and tend to rely on a broker's representations. Just as purchasers are entitled to rely on an owner's representations, *Cousineau v. Walker*, 613 P.2d 608 (Alaska 1980), purchasers should be entitled to rely on the broker's representations. Any other rule would permit brokers to use misleading statements in selling the property, yet remain immune from liability by simply remaining ignorant of the property's true characteristics. Accordingly, we hold that a purchaser who relies on a material misrepresentation, even though innocently made, has a cause of action against the broker originating or communicating the misrepresentation. *See* Restatement (Second) of Torts § 552(C)(1) [1976].

"In our view, the consequences of recognizing a cause of action in this situation are entirely beneficial. The presence of a cause of action against the broker would tend to lessen the likelihood of transactions tainted by misinformation and confusion. . . . As between the broker who communicated the misrepresentation, and the purchaser whose only fault was to rely on the broker, we think it preferable that the broker bear any loss caused by misrepresentation. Brokers, in turn, can protect themselves from liability by investigating the owner's statements, or by disclaiming knowledge, by requiring the seller to sign at the time of listing a statement setting forth representations which will be made, certifying that they are true and providing for indemnification if they are not. *See Goldman v. Hart*, 134 Ga. App. 422, 214 S.E.2d 670 (1975)."

Although the Alaska Supreme Court was speaking to innocent misrepresentation, the same policy favors liability for negligent

misrepresentation, and we find it is very persuasive. We know of no valid reason to treat real estate agents differently than other agents and exempt them from liability under § 552. The district court and the Court of Appeals erred in holding that Kansas does not recognize a cause of action for negligent misrepresentation by a real estate agent who induces a buyer to purchase real estate.

In the present case, the Mahlers relied on Tammen's statement that the water being discharged from the pipe was from the shower, sink, and dishwasher and that there were no water problems—or he knew of no water problems—in the area. The former statement corresponds fairly closely to that stated in Restatement § 552, negligent misrepresentation. In his business and in a transaction in which it may be assumed he realized a commission, Tammen supplied false information for the Mahlers' guidance. The Mahlers alleged that they were justified in relying on the information and that Tammen failed to exercise reasonable care in obtaining it.

In the phrase of the Restatement, the question is whether the agent failed "to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552(1). This is the inquiry to be made in the present case as to Tammen's conduct. Nothing in the record has been pinpointed as indicating any source for Tammen's statement other than his own assumption about the sources of the water from the pipe. If, for the sake of argument, his assumption is said to be based on general statements of the Urbans about the absence of problems with water, he made some radical changes and leaps. He converted statements which barely transcend opinions into particularized information which had the earmarks of fact, and the specific information does not necessarily follow from the general statements.

The Court of Appeals confined its consideration to the question whether Kansas courts previously have recognized a buyer's cause of action *against a real estate agent* for negligent misrepresentation. Neither the post-*Johnson* amendment to K.S.A. 58-3034 nor this court's decision in *Brunett* requires that the field of inquiry be that restricted. *Brunett* construes the statutory provision

and holds that although KREBSLA is not the basis for a private cause of action, its amendment after *Johnson* was reported did not extinguish any pre-KREBSLA rights. Before codification in 1980 of rules governing real estate brokers and salespersons, general agency principles applied to the endeavors of that occupation. See, *e.g., Akins v. Holmes*, 89 Kan. at 820. As we have seen, there are pre-KREBSLA cases in which false statements by agents are actionable irrespective of the agent's knowledge. See, *e.g., Topinka*, 167 Kan. 181. The cause of action is not precluded by K.S.A. 1993 Supp. 58-3034(b), nor is it precluded by *Brunett.*

The question of the Hejnys' liability for Tammen's statement that the water being discharged from the pipe came from the shower, sink, and dishwasher remains. There is no evidence linking the Hejnys to this statement as sources for the information, as ratifiers, or in any other way. On this ground alone, they are absolved of liability for negligent misrepresentation. Even if they had been the source of the misinformation, *Johnson* stands for the proposition that the entry of summary judgment in their favor would be proper. In that case, the sellers mistakenly advised the real estate agent that their house was served by a sewer system. This court concluded that the agent, experienced in such matters, should have known that the property was on a septic system but that the people who had lived in the house for several years had no reason to have known. 239 Kan. at 329. The court stated that "[u]nder the facts of this case, the nonliability of the sellers does not absolve the broker of liability." 239 Kan. at 332. Thus, under the rationale of *Johnson*, the liabilities of the agent and the sellers are separate and independent. Even though the legislature overruled the statutorily based cause of action permitted by *Johnson*, this would not appear to have affected the court's reasoning with respect to independent liability.

In response to their inquiries, Tammen told the Mahlers, according to Mrs. Mahler, that there were no water problems in the area and, according to Mr. Mahler, that he knew of no water problems in the area. Tammen asked Donna Urban if the water was all right and if there were any water problems on the property. Donna Urban told him that the water was all right to her

knowledge and that there were no problems. Without identifying his source, Tammen passed along what he had been told.

These statements which came from Donna Urban are like the statements of the agent in *Nordstrom*. In that case, the court absolved the agent of liability on the ground that the misinformation had been provided by the sellers and the agent believed it to be true. As noted in the earlier discussion of *Nordstrom*, there was no claim of negligent misrepresentation in that case and the court did not consider whether his belief in the truth of the statements was reasonable. In the present case, no consideration was given to whether Tammen believed Donna Urban's statements or whether belief was reasonable.

Also, no consideration was given to the question whether the Hejnys could be held liable in these circumstances. There is no allegation that Donna Urban occupied the position of an agent to the Hejnys, and there is no evidence that the Hejnys were involved at any level in providing the information. Thus, any claim against the Hejnys for negligent misrepresentation based on these statements could not withstand the motion for summary judgment.

Once it had decided not to recognize a cause of action for negligent misrepresentation by a real estate agent, the Court of Appeals briefly considered the Mahlers' claims of fraudulent misrepresentation and fraudulent concealment against Tammen and the Hejnys. The Court of Appeals concluded that the Mahlers had failed to establish the element of knowledge for both causes of action. For this reason, the Court of Appeals affirmed the district court's entry of summary judgment against the Mahlers and in favor of the defendants.

The Court of Appeals framed the question as being whether evidence of "active or constructive fraud by the Hejnys or Keenan" was sufficient. With regard to "active fraud," the Court of Appeals cited *Goff*, 1 Kan. App. 2d at 78; with regard to "constructive fraud," it cited *Sippy*, 4 Kan. App. 2d at 516. The essential elements of "active" fraud set out in *Goff* match those stated by this court in Syl. ¶ 6 of *Nordstrom*, including the declarant's knowledge of the falsity of the statement. As might be

suspected by the Court of Appeals' pairing of "active" and "constructive" fraud, it was using the former to mean supplying false information and the latter to mean failing to supply material information; that is, fraudulent concealment.

The Court of Appeals' conclusion that "the Mahlers have failed to establish a cause of action for active or constructive fraud" against either Tammen or the Hejnys is based on this summary of the evidence: "The Mahlers specifically admitted that Tammen had no knowledge of the sewage problems, the sodium and nitrate levels, or that two wells on the property needed to be plugged. They also admitted that the Hejnys had no knowledge of the water and septic tank problems." As noted earlier, the Mahlers admitted that at the time of the purchase, Tammen had no knowledge of any problems with the quality of the water or the septic system, that there was an abandoned cesspool, and that there were abandoned wells which needed to be plugged. With regard to the Hejnys, the Mahlers admitted only that the Hejnys knew of no water problems about which to tell Tammen. The district court, however, stated that its examination of the depositions failed to disclose any evidence which would establish that the Hejnys "were aware of those material facts alleged by the [Mahlers] to be the basis of their fraud claim."

For the foregoing reasons, we hold the entry of summary judgment in favor of Keenan Real Estate, Inc., is affirmed on the Mahlers' claim of fraudulent misrepresentation and reversed on the Mahlers' claim of negligent misrepresentation. The entry of summary judgment in favor of the Hejnys on the Mahlers' claims of fraudulent misrepresentation, concealment, and misrepresentation is affirmed.